James R. TYGRETT, Plaintiff,

v.

Walter E. WASHINGTON, Commissioner, District of Columbia

and

Jerry V. Wilson, Chief Metropolitan Police Dept., D. C., Defendants.

Civ. A. No. 1392-72.

United States District Court, District of Columbia.

Aug. 3, 1972.

**1248**

Glenn R. Graves, John W. Karr, Washington, D. C., for plaintiff.

Thomas R. Nedrich, Asst. Corp. Counsel, District of Columbia, Washington, D. C., for defendants.

## OPINION

WILLIAM B. JONES, District Judge.

Plaintiff James R. Tygrett was hired as a probationary officer by the Metropolitan Police Department of the District of Columbia on July 19, 1971. He was notified by the Director of the Department's Office of Personnel in a letter dated July 7, 1972 that he would be separated from his position as a police officer effective July 15, 1972.

On July 12, 1972, plaintiff filed this civil action asking this Court:

(1) to declare unlawful the defendants' order dismissing plaintiff from his employment on July 15, 1972 and to enjoin said dismissal;

(2) to declare and adjudge D.C.Code § 4–125 (1967) and General Order No. 1, Series 1201, subsection B.5. of the Metropolitan Police Department, which substantially paraphrases the language of D.C.Code § 4–125, to be unconstitutional and to enjoin defendants from enforcing, executing or threatening enforcement of the said statute and of subsection B.5. of General Order No. 1 as applied to the facts in this case.[1]

In light of the findings of fact and conclusions of law set out below, this Court need not reach the issue of the constitutionality of D.C.Code § 4–125 nor of subsection B.5. of General Order No. 1 of the police department. Having examined the record in this case and the statements of material facts submitted in accord with Local Rule 9(h), this Court finds that there are no material facts genuinely in dispute. Summary judgment, therefore, is appropriate at this juncture.

During the month of June, 1972, plaintiff actively participated in meetings of the Police Association of the District of Columbia and in lobbying activities at the House of Representatives with reference to the Police and Fire Department pay bill then pending before Congress. Certain statements allegedly made by plaintiff at those events were

---

1. On July 14, 1972, plaintiff moved this Court for a temporary restraining order restraining defendants from discharging plaintiff pending hearing on the merits of plaintiff's motion for preliminary injunction. Having heard argument of counsel, this Court denied plaintiff's motion for a temporary restraining order, finding that plaintiff would suffer no irreparable injury pending hearing on the merits, since if plaintiff were to prevail on the merits he could be reinstated on the police force with back pay. The oral statement of the Court at the conclusion of that hearing has been transcribed

and made a part of the record in this case.

Plaintiff appealed the Court's ruling, and on July 18, 1972, the United States Court of Appeals for the District of Columbia refused a stay of plaintiff's discharge pending hearing on plaintiff's motion for preliminary injunction. Defendants moved for summary judgment on July 14, 1972, and plaintiff duly filed his opposition thereto. On July 28, 1972, this Court, having heard argument of counsel on the motions pending in this case, took the matter under advisement.

published in Washington newspapers on June 16, 21, 26, and 27, 1972.

On June 28, 1972, in a tape-recorded interview with Inspector Robert W. Klotz and Captain Robert E. Ellis of the Internal Affairs Division of the Metropolitan Police Department, plaintiff was questioned about the statements attributed to him. In that interview, which has been transcribed and made a part of the record herein, plaintiff took the position that, if Congress failed to act on the Police pay bill, and if the general consensus of the police favored a "sick-out," he would falsely report himself sick and that he would be willing himself to organize and lead such a general protest.

After that interview, Inspector Klotz addressed a memorandum to Jerry V. Wilson, the Chief of Police, recommending Officer Tygrett's dismissal from the police force. Inspector Klotz cited attitudes inimical to the police force as the reason for recommending separation from the force. He stated that Officer Tygrett "has indicated that his loyalty and devotion to duty will be subordinated to his personal desires if he feels it necessary, and will even knowingly and purposely depart from the truth to achieve his goal."

On July 7, 1972, in the letter referred to above, Waddell Longus, Director of Personnel, Metropolitan Police Department, gave Officer Tygrett written notice of the reasons for his separation from service. The letter cited certain statements allegedly made by plaintiff about a "blue flu" and a "sick-out" which were subsequently quoted by the

newspapers, and Mr. Longus observed that such conduct indicated an intent to violate D.C.Code § 4–125. The letter also noted that plaintiff had affirmed his position with regard to calling in sick and organizing and leading a "sick-out" in his interview with Inspector Klotz and Captain Ellis. The final paragraph of the letter referred to the attitude implicit in plaintiff's conduct, an attitude which would not "enhance the image of the Police Department or aid in carrying out its obligation to the community which it serves."

Plaintiff's dismissal from the police department was effected under the authority of D.C.Code § 4–105 (Supp. V. 1972).[2] That statute provides that no one shall receive a permanent appointment to the police force until he has served the required probationary period, and that if at any time conduct or capacity is determined unsatisfactory, the probationer shall be separated from the service after advance written notification of the reasons for separation. The effect of the statute is to permit the dismissal of a probationary officer without the procedures required in the case of dismissal of a permanent member of the force. The statute does not provide that a probationary officer can be dismissed only after violation of some other statute or police regulation, and the statute does not make specific provisions as to content or form of the required written notification of reasons for separation from service.

■ The only question of law before the Court in this case is whether the letter from the Director of Personnel of

---

2. D.C.Code § 4–105 (Supp. V. 1972) provides:

No person shall receive a permanent appointment who has not served the required probationary period, but the service during probation shall be deemed to be service in the uniformed force if succeeded by a permanent appointment, and as such shall be included and counted in determining eligibility for advancement, promotion, retirement, and pension in accordance with existing law. If at any time during the period of probation, the conduct or capacity of the probationer is determined by the Commissioner of the District of Columbia, or his designated agent, to be unsatisfactory, the probationer shall be separated from the service after advance written notification of the reasons for and the effective date of the separation. The retention of the probationer in the service after satisfactory completion of the probationary period shall be equivalent to a permanent appointment therein.

the Metropolitan Police Department to plaintiff satisfied the notice require ments of D.C.Code § 4–105, *supra*.[3] This Court finds that it did. At oral argument, plaintiff contended that if references to plaintiff's quoted statements and to D.C.Code § 4–125 were excised from that letter, there would be nothing left to cite as a reason for separation from service. That clearly is not so. Plaintiff's statements alerted his supervisors to an attitude incompatible with the obligations of the department to the community. His supervisors would have been remiss in their duty not to have examined further into such an attitude on the part of a probationary officer. They did so and found that he was unfit for permanent appointment to the force, despite the loss to the department of its considerable investment in an otherwise promising candidate.

Plaintiff contends nevertheless that the letter from the Director of Personnel raises an issue of abridgement of plaintiff's First Amendment rights of free speech and urges a consideration of recent decisions which have affirmed the First Amendment rights of public employees. Although a consideration of the principles set forth in those cases is unnecessary in reaching the decision here on other grounds, the Court will nevertheless for the record apply those principles to the facts in the instant case.

■ There is no question that a public employee cannot be discharged solely in reprisal for the exercise of his First Amendment rights. Indeed, the United States Supreme Court recently commented:

> For at least a quarter century, this Court has made clear that even though a person has no 'right' to a valuable governmental benefit [in this case, employment] and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not act. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech. Perry v. Sinderman, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (decided June 29, 1972).

■ In *Perry*, the Court held that an employee's lack of a contractual or tenure right to renewal of employment at the end of a specified period is immaterial to a claim of violation of First Amendment rights. Thus, in the case before the Court here, plaintiff, although only a probationary officer, could not be dismissed solely in retaliation for the exercise of his First Amendment rights.

■ But the First Amendment right of free speech, whether in the context of employment or any other legitimate activity, is not absolute. Frequently the right to speak freely must be balanced against legitimate conflicting interests. This was the approach taken by the Court in Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), a case cited by both parties here.

In *Pickering*, the Board of Education dismissed a teacher for writing and publishing in a newspaper a letter criticizing the Board's allocation of school funds between educational and athletic programs and the Board's methods of informing or preventing the informing of the taxpayers of the real reasons why additional tax revenues were being sought for the schools.

The Court in *Pickering* refused to apply the "actual malice" standard of New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) (applicable to libel suits by public officials) to criticism by teachers and other public

---

3. There has been no question raised here as to the designation of the Chief of Police by the Commissioner of the District of Columbia as his agent under D.C. Code § 4–105, *supra*. It was at the direction of the Chief of Police that the Director of the Office of Personnel notified plaintiff of his separation from service.

employees of their superiors. In fact, because of the enormous variety of fact situations in which critical statements by public employees might be thought to be grounds for dismissal by their superiors, the Court refused to lay down any general standard against which such criticism might be judged. 391 U.S. at 569.

The Court rather attempted to balance the teacher's interest as a citizen in speaking about matters of public concern against the State's interest in promoting the efficiency of its public services. Without intimating how it would rule if certain elements had been present in Pickering's relationship with the Board of Education, the Court, in balancing the conflicting interests, pointed out that such elements were not present in that case:

1. Pickering's statements were not directed towards a person with whom he would normally be in contact in the course of his daily work as a teacher. 391 U.S. at 569–570, 88 S.Ct. at 1735;

2. Thus there was not present any question of maintaining discipline by immediate superiors and harmony among co-workers. *Id.* at 570, 88 S.Ct. at 1735;

3. Pickering's relationship with the Board of Education was not the kind of close working relationship for which it could be claimed that personal loyalty and confidence are essential. *Id.,* 88 S. Ct. at 1735;

4. Pickering's letter did not damage the professional reputation of the Board of Education and did not foment controversy and conflict among Pickering's co-workers. *Id.,* 88 S.Ct. at 1736.

■ Although Pickering, as was stated above, lays down no rule where such elements are present, the absence of those elements in that case clearly influenced the Court in its holding that Pickering should not have been dismissed from his position. Elements which were absent in *Pickering* are, however, clearly present in the instant case. Plaintiff's interest in stating that he would falsely report himself sick and organize and lead such a "sick-out" if that were the "general consensus" of the other officers has to be balanced against the Police Department's interests in maintaining: (1) discipline by immediate superiors; (2) harmony and morale among its officers; (3) personal loyalty of its officers to the department and to the community; and (4) the professional reputation of the department in the community. In the circumstances of this case, plaintiff's interest as a citizen in making such statements whether in public or in an interview with his superiors is outweighed by the interests of the police department where the department is judging the conduct and capacity of a probationary officer.

Plaintiff cites several recent cases which have applied the balancing of interests test set forth in *Pickering* to situations involving the disciplining or dismissal of police officers. Plaintiff concedes that none of those cases presents facts identical to those in the case at bar. Having examined those cases, the Court finds that they do not call for a reversal of the decision of the police department to dismiss plaintiff under D. C.Code § 4–105, *supra.* The issue here is not the constitutionality of an overly broad statute or regulation prohibiting controversial or disparaging statements to the public about police department operations or personnel, Muller v. Conlisk, 429 F.2d 901 (7th Cir. 1970); Flynn v. Giarusso, 321 F.Supp. 1296 (E.D.La. 1971); Brukiewa v. Police Commissioner of Baltimore, 257 Md. 36, 263 A.2d 210 (1970); In re Gioglio, 104 N.J.Super. 88, 248 A.2d 570 (1968). Nor does this case involve the discharge of a police officer on the basis of private conduct which bears no relationship to his official duties, Battle v. Mulholland, 439 F.2d 321 (5th Cir. 1971); Bruns v. Pomerleau, 319 F.Supp. 58 (D.Md.1970).

■ Plaintiff nevertheless contends that *Battle, Brukiewa* and *In re Gioglio, supra,* place the burden on the police department to make a factual showing that

the employee's statements resulted in: (1) reduced efficiency or usefulness of the employee as a police officer; or (2) reduced efficiency, discipline or harmony in the operation of the police department. But such a burden would be placed on the police department only if plaintiff first made a sufficient showing that his dismissal resulted solely in reprisal for his exercise of First Amendment rights. See Perry v. Sinderman and Battle v. Mulholland, *supra.*

In *Battle,* the Court could not determine whether the officer had voluntarily resigned or had been discharged solely because of constitutionally protected conduct unrelated to police activities. The Court of Appeals, therefore, reversed and remanded the case to the District Court for further proceedings in light of its opinion. In *Brukiewa, supra,* the Court found that the only basis for the disciplining of the officer in that case was his criticism of the police department administration in a televised interview. And in the case of *In re Gioglio, supra,* the Court found that one of the two charges formally preferred against the officer in intra-departmental proceedings was based upon statements made in an interview with a newspaper reporter. In *Brukiewa* and *Gioglio,* therefore, the Court found that the disciplined officers had shown sufficiently that the actions taken against them resulted solely from their exercise of First Amendment rights. Consequently, the burden was placed on the police department in those cases to show the harm to the efficiency of the officer or the department's operations resulting from the officer's statements.

In the instant case, plaintiff has not shown that his dismissal resulted from the exercise of his First Amendment right of free speech. He was dismissed pursuant to D.C.Code § 4–105, *supra,* after his supervisors determined that his conduct or capacity for permanent appointment was unsatisfactory. In making such determinations, the officials of the department need not be deaf to avowed statements of a probationary officer which evidence an attitude inimical to the discipline and efficiency of the department and its obligations to the community.

In light of the foregoing, defendants' motion for summary judgment is granted, and plaintiff's motion for preliminary injunction is denied as moot. An appropriate order is being entered with this opinion.