528 F.2d 750
 Carl E. HANNEMAN, as an Individual and as a representative
of the class of Milwaukee Policemen similarly
situated, et al., Plaintiffs-Appellants,
v.
Harold A. BREIER, as an Individual and as Chief of Police of
the City of Milwaukee, and the City of Milwaukee,
a municipality, Defendants-Appellees.
 No. 75--1271.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 25, 1975.
Decided Jan. 6, 1976.
 
 David Loeffler, Milwaukee, Wis., for plaintiffs-appellants.
 James B. Brennan, Grant F. Langley, Milwaukee, Wis., for defendants-appellees.
 Before HASTINGS, Senior Circuit Judge, and SPRECHER and BAUER, Circuit Judges.
 HASTINGS, Senior Circuit Judge.
 
 
 1
 This is an appeal from the dismissal of a class action suit brought by Milwaukee police officers against Harold A. Breier, individually and as Chief of Police of the City of Milwaukee,[1] charging that the discipline imposed on individual plaintiffs under a police department rule prohibiting disclosure of confidential police business abridged plaintiffs' First and Fourteenth Amendment rights in violation of the Civil Rights Act, 42 U.S.C. § 1983.
 
 
 2
 The named plaintiffs are members of the Milwaukee Professional Policemen's Protective Association (MPPPA). From July 1970 through January 1972, the City of Milwaukee and the MPPPA were negotiating a collective bargaining agreement covering nonsupervisory law enforcement personnel. The labor agreement eventually negotiated was required to be approved by the mayor and the city council.[2]
 
 
 3
 On August 26, 1970, certain of the named plaintiffs, acting as officers of the MPPPA, distributed to the MPPPA membership a letter endorsing candidates for national, state and local political office running in the upcoming primary. This publication prompted an investigation into the political activities of the MPPPA and its officers to determine whether there had been any violation of a police department regulation prohibiting police officers from using the influence of their office for political purposes.[3] An investigator for the department interviewed certain MPPPA members, including the named plaintiffs. Each was advised that the investigation was confidential.
 
 
 4
 On September 16, 1970, a front-page story in the Milwaukee Journal disclosed that an internal investigation into the political activity of MPPPA officers was underway.[4] The original leak of this story to the press is not attributed to the MPPPA.
 
 
 5
 On September 17, 1970, the named plaintiffs on behalf of the MPPPA distributed to the mayor, the city council, the city's labor negotiator, and the state labor board, a letter which confirmed that officers of the MPPPA had been questioned by 'agents of the City' in connection with their political activities.[5] The letter urged city and state officials to protect the MPPPA officers from pressures being exerted by the City and its agents.
 
 
 6
 The September 17 letter prompted a separate departmental investigation and resulted in separate charges being brought against the named plaintiffs for breaching the confidentiality of the Department's internal affairs in violation of Rule 29, § 32, which provides:
 
 
 7
 Members of the Department shall treat as confidential the official business of the Department. They shall not impart it to anyone except those for whom it is intended, or as directed by their commanding officer, or under due process of law; and they shall not make known to any person, whether or not a member of the Department, any special order which they may receive, unless required by the nature of the order. A commanding officer of a district or bureau shall impart to representatives of the press, upon establishing their identity, current news, providing the ends of justice are not thereby defeated.
 
 
 8
 Each of the named plaintiffs was found guilty of violating the confidentiality rule. The three officers responsible for the August 26 letter were also found to have violated the rule prohibiting political activity.[6] Sanctions for these violations were imposed by Police Chief Breier. One officer was suspended for five days; the others were required to work three to five off-days without pay. A record of the disciplinary action was placed in each individual's employment file.
 
 
 9
 Plaintiffs filed the instant action challenging as unconstitutional the defendant's application of the department's confidentiality rule and requesting injunctive relief and damages. After submission to the district court on depositions and briefs, the case was dismissed on the merits on October 2, 1974. The court based the dismissal on its factual conclusions that the September 17 letter was not necessary to secure plaintiffs' bargaining position and that, contrary to plaintiffs' beliefs and assertions, the departmental investigation was not being conducted for purposes of harassment.[7] On February 4, 1975, plaintiffs' motion to alter the judgment was denied, upon the court's further conclusion that the disclosure of confidential information in violation of departmental regulations is not constitutionally protected.[8] Plaintiffs appeal from the judgment and orders of October 2 and February 4.
 
 
 10
 The issue on appeal is whether the imposition of sanctions against police officers, under a police department confidentiality rule, for distribution of a letter confirming the existence of an already publicized internal police investigation violated the disciplined police officers' First and Fourteenth Amendment rights.
 
 
 11
 It is now well settled that public employees enjoy the full protection of the First Amendment. Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). At the same time, it is also recognized that, because of the nature of the employment relationship, the state as employer has an interest in regulating its employees' public utterances distinct from its interest in regulating the statements of the public at large. Pickering v. Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). In Pickering the Supreme Court declined to adopt a general standard for reconciling state and individual interests in all cases. Instead the Court set forth a method for analyzing First Amendment issues arising in the public employment context which is appropriate in balancing those interests as they relate to the facts before us in the case at bar.
 
 
 12
 The plaintiff in Pickering was a teacher discharged for submitting a letter to the local newspaper criticizing school board budgetary policies. The Court found that the public statement at issue related to a matter of general public concern and that 'the fact of employment is only tangentially and insubstantially involved in the subject matter of the public communication.' 391 U.S. at 574, 88 S.Ct. at 1738. The Court concluded that no peculiar state interest arising from the employment relationship was at stake and that Pickering was therefore entitled to the same First Amendment protection afforded the general public. Applying the standard of New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the Court held that Pickering could not be discharged for his public statement, even though it was at least partially false, without proof that the statement was knowingly or recklessly made. 391 U.S. at 574, 88 S.Ct. 1731.
 
 
 13
 However, the Court cautioned that a different standard may apply where the public statement at issue is of less 'public concern' or where the special nature of the employment relationship makes the need for discipline more compelling. The Court found it relevant, for example, that the statement was not directed at an immediate superior or at an individual with whom Pickering had a close working relationship and was therefore not disruptive of the school's discipline and harmony. Id. at 569--70, 88 S.Ct. 1731. The Court also emphasized that the statement did not contain 'inside' information that could not be effectively refuted by school board publication of the correct data. Id. at 572, 88 S.Ct. 1731. Finally, the Court concluded that publication of the statement neither impaired Pickering's ability to perform his employment duties nor interfered with the regular operation of the schools. Id. at 573, 88 S.Ct. 1731. Only where these missing factors are present and persuasive may an individual's otherwise protected freedom of speech be subordinated to the state interest. 'The problem in any case is to arrive at a balance between the interests of a teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.' Id. at 568, 88 S.Ct. at 1734.
 
 
 14
 This court followed the Pickering analysis in Donahue v. Staunton, 7 Cir., 471 F.2d 475 (1972), cert. denied, 410 U.S. 955, 93 S.Ct. 1419, 35 L.Ed.2d 687 (1973). There a chaplain employed by a state mental institution was discharged on account of his public statements exposing unwholesome conditions within the institution. The defendant in that case urged that the chaplain, as a function of his employment, was required to publicly promote institutional programs and that this function could no longer be performed in view of his outspoken criticism of the institution. We found, however, that this function was not such an integral part of his job that public criticism could not be tolerated. After considering all the state interests applicable in the case, we concluded that 'the interest of society in 'uninhibited and robust debate' on matters of public concern, such as mental health care, and plaintiff's individual interest in being free to speak out on matters of concern to him, outweigh those of the State as an employer.' Id. at 481.
 
 
 15
 The analysis developed in Pickering and Donahue requires us to consider in the instant appeal whether a state interest inherent in the employment relationship between police officers and the chief of police justifies the police chief's action in disciplining plaintiffs for making the particular statements here at issue.
 
 
 16
 The Supreme Court has recognized that 'policemen, like teachers and lawyers, are not relegated to a watered-down version of constitutional rights.' Garrity v. New Jersey, 385 U.S. at 500, 87 S.Ct. at 620. This court has rejected any broad analogy between the interests of a municipal police force and those of a military unit requiring rigid discipline and broad curtailment of constitutional freedoms. Bence v. Breier, 7 Cir., 501 F.2d 1185, 1192 (1974), cert. denied, 419 U.S. 1121, 95 S.Ct. 804, 42 L.Ed.2d 821 (1975); Muller v. Conlisk, 7 Cir., 429 F.2d 901, 904 (1970).[9] We stated in Muller: 'To the extent that being a policeman is public employment with unique characteristics, the right of the employee to speak on matters concerning his employment with the full freedom of any citizen may be more or less limited. It is not, however, destroyed.' Id. Any unique aspect of police department employment is to be considered as but one element in the balancing of interests in an individual case.
 
 
 17
 The Milwaukee Police Department regulation at issue in this case, which prohibits employees from disclosing the confidential business of the department, is clearly valid on its face. A public employer has a legitimate interest in preserving confidentiality in the conduct of its internal affairs. This is particularly true in the sensitive area of law enforcement. A general confidentiality rule prevents improper use of inside information obtained in the course of public employment. The rule curtails the publication of inaccurate or misleading statements which might result from premature disclosure of pending matters. It further insures that the public will not erroneously attribute to the police department a statement made by a single officer without official sanction. The regulation essentially prevents the public employee from abusing the public confidence which inheres in his position.
 
 
 18
 In order to justify application of the confidentiality rule in this case, however, the defendant chief of police must still meet the requirements of Pickering v. Board of Education, supra. He must show a state interest in confidentiality applicable on these facts which outweighs the public and individual interests in the particular statements made.
 
 
 19
 In this case plaintiffs were disciplined for distributing their September 17 letter concerning the police department's political activity investigation which they had been instructed to keep confidential. After publication of the September 16 newspaper article, however, the investigation was no longer a secret. In fact, the newspaper article included a statement by Chief Breier acknowledging that an investigation was in progress. N. 4, supra. Plaintiffs' September 17 letter verified the factual details contained in the newspaper story. It also included charges that Chief Breier was conducting the internal investigation for improper purposes. Aside from these allegations, the letter disclosed no factual information not contained in the newspaper article published the day before.
 
 
 20
 Under these circumstances, we do not believe that the state interests which support the police department's confidentiality rule justify its application in this case. By the time plaintiffs' letter appeared, the ability of the chief of police to conduct his internal investigation in private had already been destroyed by publication of a front-page newspaper article disclosing the existence of the investigation and the persons and subjects involved.
 
 
 21
 In view of the prior newspaper coverage, the only new disclosure in plaintiffs' letter was their unfounded charge that Chief Breier was acting for improper anti-union motives. This disclosure was objectionable not because it was confidential, but rather because it was false and derogatory. The holding in Pickering suggests, however, that where the only state interest asserted is in preventing publication of false and derogatory statements, the state must meet the requirements of New York Times Co. v. Sullivan. That standard was not met in this case; the district court found that the named plaintiffs believed that the investigation into their political activity was in fact being conducted for purposes of harassment. There was no evidence that the statements were knowingly or recklessly false.
 
 
 22
 Nor were the plaintiffs in such a close personal working relationship with Chief Breier that sharp public criticism could not be tolerated. In fact they were apparent adversaries in the current collective bargaining situation. At the core of the First Amendment is a preference for debate rather than suppression. We found it significant in Donahue v. Staunton, supra, that 'defendants have not shown that they were hindered in any way in responding to the accusations.' 471 F.2d at 481. Chief Breier was equally competent to defend his own position publicly against plaintiffs' false accusations without a compelling need to suppress those accusations.
 
 
 23
 Of course departmental discipline may be undermined when police officers disobey an official regulation and an express order not to disclose police business. The department's general interest in discipline alone, however, does not outweigh the individual and public interest in the subject of plaintiffs' September 17 letter. See Bence v. Breier, 501 F.2d at 1192. Once the matter was placed in the public eye, plaintiffs, as officers of the certified collective bargaining representative of nonsupervisory policemen, had a legitimate interest in bringing any improper anti-union conduct by the chief of police in connection with the now-publicized investigation to the attention of influential government officials outside the police department.[10] The finding by the district court that the investigation was not motivated by anti-union animus does not negate plaintiffs' interest in soliciting outside support which they believed to be necessary at the time.[11]
 
 
 24
 The First Amendment protects not only the individual's interest in speaking out but also the public's interest in being informed. Pickering v. Board of Education, 391 U.S. at 573, 88 S.Ct. 1731; Donahue v. Staunton,471 F.2d at 481. We believe that plaintiffs' September 17 letter touched on matters of public concern. Wisconsin has undertaken broad regulation of the public employment relationship in the public interest.[12] Moreover, the terms of a collective bargaining agreement covering municipal police officers may include provisions governing matters of important public policy.[13] The state and city decision-makers to whom the letter was addressed were particularly concerned with its allegations because of their responsibilities either with respect to the negotiation and adoption of the collective bargaining agreement or with respect to public employer-employee relations generally. These government officials and the public at large were thus properly concerned with charges of misuse of police department internal discipline procedures to cripple the police officers' bargaining representative.
 
 
 25
 Upon consideration of all the factors deemed relevant in prior decisions of the Supreme Court and of this court, we conclude that the defendant chief of police has not demonstrated a need to enforce the confidentiality rule against the statements here in issue which outweighs the individual and public interests in their expression. It follows then that any disciplinary action taken against the named plaintiffs on account of their September 17 letter is in violation of their rights as guaranteed by the First and Fourteenth Amendments.
 
 
 26
 Our decision leaves unresolved several problems as to the remedies, legal and equitable, to which plaintiffs may be entitled. The sanctions imposed on plaintiffs for violation of the confidentiality rule have already been served. Plaintiffs have requested that, where a single sanction was imposed on a policeman found to have violated both the political activity rule and the confidentiality rule, the penalty be recomputed to reflect only the political activity violation. This recomputation will be required if damages are assessed; however, damages are appropriate only if plaintiffs prove defendant's bad faith as required by Wood v. Strickland, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). Plaintiffs' request on oral argument for prospective injunctive relief against further application of the department's confidentiality rule appears to be without merit within the narrow context of our disposition of this matter. Their request for expungement from their employment files of the confidentiality rule violations merits consideration. We have concluded, however, that all questions of remedy should first be determined by the district court on remand after an appropriate hearing.
 
 
 27
 The judgment of the district court is reversed and this cause is remanded for consideration of an appropriate remedy.
 
 
 
 [1]
 All claims against the City of Milwaukee, the only other party defendant, have been abandoned
 
 
 [2]
 Cf. Wis.Stat. § 65.05 (1973); Milwaukee, Wis., Charter Ordinance §§ 4.01, 4.10 and 4.23
 
 
 [3]
 Milwaukee Police Department Rule 29, Section 31 provides:
 SECTION 31. Members of the Department shall not solicit or make contribution in money or other thing, directly or indirectly, on any pretext, to any persons, committee, or association, for political purposes; nor shall they interfere or use the influence of their office for political reasons.
 We upheld the constitutionality of Section 31 in Paulos v. Breier, 7 Cir., 507 F.2d 1383 (1974).
 
 
 [4]
 The newspaper article stated in part:
 'The eight member board of the Milwaukee policemen's union was interviewed by Police Inspector Arnold Kramer Tuesday about the group's political activity. * * *
 'According to one source, the members were questioned about their role in the endorsement by the group, the Professional Policeman's (sic) Protective Association of Milwaukee, of some candidates in the Sept. 8 primary election. * * *
 'Police Chief Harold A. Breier acknowledged Tuesday that the association officers were interviewed, but declined to comment other than to repeat that he was taking 'a good hard look' at the situation.' Milwaukee Journal, Sept. 16, 1970, at 1 and 6.
 The article also disclosed the names of the individuals who had been interviewed by the department's investigator.
 
 
 [5]
 The plaintiffs' letter stated in part:
 'This letter is to protest the fact that members of the Board of Trustees of the Professional Policemen's Protective Association are being interfered with, restrained and coerced by the City of Milwaukee and/or its agents.
 'Under duress, against our will, we are being forced by the City of Milwaukee and/or its agents to answer questions and give statements concerning our activity as members of the Board of Trustees of the Professional Policemen's Protective Association. This has been with the threat of disciplinary action and even the possibility of discontinued employment for our noncompliance.
 'We have been questioned and required to give statements concerning our activity as members of the Board of Trustees in the following areas.
 
 
 [1]
 Our attendance at the State conventions of the Republican and Democratic parties
 
 
 [2]
 A letter dated July 14, 1970 sent by the Board to James J. Mortier concerning our current labor negotiations
 
 
 [3]
 A letter dated August 26, 1970 sent by the Board to our members concerning candidates in the September 8th primary election.'
 The remainder of the letter made no additional factual disclosures. The letter was signed by the seven named plaintiffs.
 
 
 [6]
 Plaintiffs concede the validity of the rule against political activity and do not challenge here the discipline imposed under the rule
 
 
 [7]
 Unreported Decision and Order, October 2, 1974
 
 
 [8]
 Hanneman v. Breier, E.D.Wis., 390 F.Supp. 633 (1975)
 
 
 [9]
 In Muller we found a department regulation prohibiting policemen from making statements 'derogatory to the Department' void for overbreadth. In Bence we found void for vagueness a police department regulation which prohibited 'conduct unbecoming a member and detrimental to the service,' although the Supreme Court had upheld a similar regulation in the military context. See Parker v. Levy, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974)
 
 
 [10]
 The right to form and join a union has been afforded constitutional protection. McLaughlin v. Tilendis, 7 Cir., 398 F.2d 287 (1968). Wisconsin's municipal employee bargaining statute further protects the right to engage in union activity. Wis.Stat. § 111.70 (1973). Section 111.70(3)(1) makes it an unfair labor practice for a municipal employer to 'interfere with, restrain or coerce municipal employees in the exercise of their rights guaranteed (by the Act.)'
 
 
 [11]
 In Bence v. Breier, supra, we stated our belief that a letter by officers of the policemen's union to the City's labor negotiator outlining a proposed bargaining demand and explaining the incident that provided the basis for the demand could not be constitutionally prohibited even under a valid rule. 501 F.2d at 1193. This was so even though plaintiffs' account of the incident was erroneous. Id. at 1187
 
 
 [12]
 Cf. Wisconsin's Employment Peace Act, which states in its Declaration of Policy: '(The State) recognizes that there are three major interests involved, namely: That of the public, the employe, and the employer.' Wis.Stat. § 111.01 (1973). See n. 10, supra
 
 
 [13]
 Cf. Summers, Public Employee Bargaining: A Political Perspective, 83 Yale L.J. 1156 (1974)