**Samuel HAURILAK, Plaintiff,**

v.

**Francis X. KELLEY and George F. Regan, Defendants.**

**Civ. No. N–75–18.**

United States District Court, District of Connecticut.

Jan. 3, 1977.

---

8. Against Remer, Poe and Woe.

9. Against Remer, Poe, Woe, Dumpson, Parry, Beine, Dall, Doe and Roe.

Ralph L. Atkins, Chicopee, Mass., for plaintiff.

William J. Curran, Bridgeport, Conn., for defendants.

## MEMORANDUM OPINION

LUMBARD, Circuit Judge: [*]

Samuel Haurilak brings this action under 42 U.S.C. § 1983 seeking declaratory and injunctive relief and damages. Jurisdiction is founded upon 28 U.S.C. §§ 1343(3) & (4), 2201. Plaintiff is employed as a police officer by the City of Shelton, Connecticut. Defendant Francis X. Kelley is the mayor of Shelton and defendant George F. Regan is the city's chief of police. Plaintiff contends that defendants, acting pursuant to certain police regulations and city ordinances,[1] suspended him from his employment in violation of his First and Fourteenth Amendment guarantees of freedom of speech and expression. The court finds that as applied to plaintiff, the local regulations at issue unconstitutionally infringe upon the right of free speech.

The case was tried to the court upon a stipulated set of facts, which was supplemented by the testimony of Haurilak and Regan. Haurilak has been a member of the Shelton Police Department since 1969. He testified that he began in the patrol division, was later transferred to the youth bureau, and was elevated to the rank of detective some time early in 1972. In November of 1972, the voters of Shelton approved a revision of the city charter that provided for a merit system for the appointment and promotion of city employees. The charter revision empowered the mayor to have a set of rules prepared for implementing the merit system, including a provision for the holding of competitive exams. Pursuant to these provisions, some time in January, 1973 the mayor approved the "Personnel Rules and Merit System" (hereinafter "the Merit System"). According to plaintiff, in June, 1973 a competitive exam was given to members of the police department and applicants for employment with the department; plaintiff claims to have achieved the fourth highest score of the 80 individuals tested. During this time he was attending the University of New Haven, from which he obtained a degree in criminal justice in June, 1974.

In early February, 1974 plaintiff was transferred from his position as a detective in the investigative division to the uniformed police division. Plaintiff contends that he was replaced in the investigative division by an officer who lacked his experience and who had failed the merit exam. Plaintiff then wrote a letter to Alderman Walter Frolish dated February 15, 1974, which laid forth plaintiff's educational background and experience as an officer. It then quoted from several sections of the Merit System, providing that employment was to be based upon merit and fitness, that just and equitable employment incentives should be established, that high morale should be maintained by fair administration, and that the mayor should encourage employee training programs. The letter then explained that plaintiff felt that given his background and education, he did not understand how his transfer could be

---

[*] Sitting by designation

1. Since the term "statute" in 28 U.S.C. § 2281 does not encompass local ordinances or resolutions, *Perez v. Ledesma,* 401 U.S. 82, 86, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971); *Moody v. Flowers,* 387 U.S. 97, 101, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967), and since the parties agree that the administrative regulations at issue are of purely local concern, it was not necessary to convene a three-judge court to hear plaintiff's request for injunctive relief. See *Magget v. Norton,* 519 F.2d 599, 603 (2d Cir. 1975).

justified within the merit system; further, plaintiff stated that he had received no explanation from the mayor or chief of police for the transfer. The letter closed by stating, "I am requesting an investigation into the transfers and promotions within the department, as I do not feel that they are consistent with the purpose of the Merit System."

On July 9, 1974 plaintiff wrote a letter to the mayor, copies of which were sent by plaintiff to the chief of police, the city administrative assistant, members of the board of aldermen, and the chairmen of the Democratic and Republican town committees. This letter was similar to that of February 15. It began by stating that ". . . it is my intent to relate to you my endeavors and opinions of the Shelton Police Department as it directly pertains to me." The letter then set forth plaintiff's education and work experience, and again quoted from the Merit System. Plaintiff once again explained that he felt the town's merit system was being improperly applied; plaintiff also indicated that despite his "superior qualifications" he felt that he was being discriminated against for personal or political reasons. Plaintiff then requested that individuals, such as himself, be placed in positions within the department suited to their experience and education. The letter closed by stating, "I believe that with the combined ideas of a rapidly growing city, expanding of the police department and a new facility, and an implementation of a Charter Revision regarding the Merit System, my request is an attempt to professionalize and increase the proficiency of the Shelton Police Department."

In a letter dated July 16, 1974 plaintiff was informed by defendant Regan that, beginning July 17, 1974, he was to be suspended without pay for a period of 15 days.

The letter explained that plaintiff's letters of February 15 and July 9 violated the Shelton Police Department Manual of Procedure (hereinafter "the Police Rules"), sections 9 and 10. The letter pointed out that authority for the suspension rested upon Section 6.7.2.2 of the City Charter and Article 11, § 110.2 of the Merit System,[2] and concluded by stating: "Any further infractions of the rules will result in dismissal."

Sections 9 and 10 of the Police Department Rules provide as follows:

9. Members or employees of the department shall not request the aid of any person outside the department to have them transferred to another assignment or beat or to have them restored to any assignment or beat from which they have been removed by order of a superior officer, or to have them promoted to a higher rank in the service; nor shall they knowingly permit any petition to be gotten up or presented by citizens in their behalf requesting such transfer, restoration, or promotion.

10. Members or employees of the department shall not under any circumstances or in any manner whatsoever speak critically or derogatorily to other members or employees or to any persons outside of the department regarding the orders or instructions issued by superior officer; but where there is sound reason to believe that such orders or instructions are inconsistent or unjust, it is the right and duty of any member or employee to appeal to higher authority in the department.

On July 23, 1974 the International Brotherhood of Police Officers, acting on behalf of plaintiff, requested a hearing on plaintiff's suspension before the Public Employees Appeal Board of the City of Shelton

---

**2.** Article 11, § 110.2 of the Merit System provides in part:

A permanent employee may be dismissed or demoted whenever in the judgment of the appointing authority the employee's work or conduct so warrants. . . .

Section 6.7.2.2 of the City Charter provides in part:

. . . The Chief of Police shall . . . make rules and regulations concerning the operation of the department and the conduct of all officers and employees thereof . . . Disobedience to the lawful orders, rules and regulations of the Chief of Police shall be grounds for dismissal or for other appropriate disciplinary action.

(hereinafter "the Board").[3] On August 27, 1974 a public hearing was conducted and the Board, which renders only advisory opinions, held that plaintiff's suspension was unwarranted since he had violated neither police department nor merit system rules and regulations. In a letter to the Board, dated September 4, 1974, Mayor Kelley rejected the Board's findings and recommendations and affirmed plaintiff's suspension. Kelley stated that plaintiff's letters were an attempt to garner support to have him transferred back to the detective bureau and spoke critically and derogatorily of the chief of police. The letter then indicated that Chief Regan had acted within his discretion in finding that plaintiff's letters violated sections 9 and 10 of the Police Rules and that Regan acted within his authority in applying the rules and suspending plaintiff.

Plaintiff then initiated this civil rights suit.[4] He claims that section 10 of the Police Rules is unconstitutionally vague and overbroad and, further, that as applied in this case sections 9 and 10 unconstitutionally infringe upon his right of free speech. The court holds that sections 9 and 10 may not constitutionally be applied to prohibit the conduct engaged in by the plaintiff and that section 10 is unconstitutionally overbroad.

In *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), the Supreme Court indicated that the state's legitimate interest as an employer in promoting the efficiency of the public services it performs through its employees must be balanced against the employees' First Amendment right as citizens to speak out on matters of public concern, including matters relating to their employment. See 391 U.S. at 568, 88 S.Ct. 1731. In striking this balance *Pickering* and the cases that have followed it have indicated that two broad considerations should be taken into account: first, the character of the speech involved; and, second, the potential such speech has for disrupting the employment relationship and efficient operations. Factors under the first consideration include: whether the statements were defamatory or false, see, e. g., *Pickering v. Board of Education,* supra, 391 U.S. at 574, 88 S.Ct. 1731; *Fisher v. Walker,* 464 F.2d 1147, 1153–54 (10th Cir. 1972); *Magri v. Giarrusso,* 379 F.Supp. 353, 360–61 (E.D.La. 1974); whether the statements concerned matters of public interest, see, e. g., *Pickering v. Board of Education,* supra, 391 U.S. at 573–74, 88 S.Ct. 1731; *Hanneman v. Breir,* 528 F.2d 750, 753 (7th Cir. 1976); and, whether the statements were made in a public or private forum, see, e. g., *Roseman v. Indiana University of Pennsylvania,* 520 F.2d 1364, 1368 (3rd Cir. 1975); *Sprague v. Fitzpatrick,* 412 F.Supp. 910, 917–20 (E.D. Pa.1976). Factors under the second consideration include: whether the statements were directed at an immediate superior or an individual with whom the speaker had a close working relationship and, thus, whether the statements might interfere with the maintenance of discipline and harmony among co-workers, see, e. g., *Pickering v. Board of Education,* supra, 391 U.S. at 569–70, 88 S.Ct. 1731; *Hanneman v. Breier,* supra, 528 F.2d at 753; and, whether the working relationship is of a type for which intimacy, or personal loyalty and confidence are essential, see, e. g., *Pickering v. Board of Education,* supra, 391 U.S. at 570 and 570 n. 3, 88 S.Ct. 1731; *Sprague v. Fitzpatrick,* supra, 412 F.Supp. at 919. See also *Magri*

---

**3.** Section 5.3.3. of the City Charter provides for the establishment of the Board, which is composed of city electors and is authorized to hear employee grievances concerning "the interpretation, construction, or application of the merit system." In addition, Article 11, §§ 110.2 and .3 of the Merit System provide for the Board to hear grievances regarding dismissals, suspensions or demotions.

**4.** Article 11, § 110.3 of the Merit System provides that an employee may appeal an adverse decision of the mayor to the Court of Common Pleas for Fairfield County; however, such appeal must be taken within 15 days of notification of the mayor's decision. Plaintiff elected not to take such an appeal. In a decision dated December 31, 1975 Judge Zampano denied defendants' motion requesting the court to abstain pending plaintiff's exhaustion of any administrative and judicial remedies.

*v. Giarrusso,* supra, 379 F.Supp. at 360–61; *Tygrett v. Washington,* 346 F.Supp. 1247, 1251 (D.D.C.1972).

■ Applying the analysis suggested by *Pickering,* this court concludes that sections 9 and 10 of the Police Rules may not constitutionally be applied to prohibit letters of the sort written by plaintiff. Haurilak's letters concerned the operation of the town's merit system, a matter that had recently been before the voters of Shelton and was of obvious public concern. The court rejects defendants' contention that Haurilak's letters were merely private communications aimed at obtaining the aid of local politicians to regain his position as a detective. After examining the letters and hearing plaintiff's testimony, the court is convinced that plaintiff had a genuine interest in speaking out on a matter of public concern relating to his employment. Further, the First Amendment protects not only the individual's interest in speaking out, but the public's interest in being informed, see, e. g., *Pickering v. Board of Education,* supra, 391 U.S. at 573, 88 S.Ct. 1731; *Hanneman v. Breir,* supra, 528 F.2d at 755; plaintiff's letters served this interest by providing an insider's view of the operation of the merit system. Indeed, the fact that a citizen may have a stake in the outcome of a decision related to the public welfare may make his right to be heard on the matter that much more important. See, e. g., *City of Madison v. Wisconsin Employment Relations Commission,* —— U.S. ——, ——, 97 S.Ct. 421, 50 L.Ed.2d 376 (1976). Although plaintiff's letters were not publicized by way of mass media, it appears that all the local officials likely to be concerned with the operation of the merit system were made aware of plaintiff's opinions. See *Hanneman v. Breier,* supra, 528 F.2d at 755–56.

■ Taking into account the special nature of a police officer's duties and the need to maintain police discipline, see *Kelly v. Johnson,* 425 U.S. 238, 245–46, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976); *Dwen v. Barry,* 483 F.2d 1126, 1129 (2d Cir. 1973), the city's interest in efficiency and discipline does not, under the circumstances here present, outweigh plaintiff's interest in free speech. The cases cited by defendants involving vitriolic, defamatory or highly disruptive speech simply do not apply here. See *Fisher v. Walker,* supra; *Sprague v. Fitzgerald,* supra. Although at one point plaintiff suggested his transfer may have been politically motivated, his letters were generally couched in respectful terms and merely expressed his opinion that the merit system was not being properly applied. Nor were plaintiff and the chief of police in such a close working relationship that such criticism of official policy could not be tolerated. See *Hanneman v. Breier,* supra, 528 F.2d at 755 (officer's relationship with police chief); compare *Sprague v. Fitzpatrick,* supra, (first assistant district attorney's relationship with district attorney). Not only does the record fail to show that plaintiff's letters in any way interfered with the normal operations of the Shelton Police Department, but the court finds it difficult to conceive how plaintiff's conduct could have been considered to present any danger of disruption. Under the circumstances, the city has not demonstrated an interest sufficient to outweigh the impairment of plaintiff's First Amendment rights.

■ Further, although the court rejects plaintiff's contention that section 10 is vague, it finds that this section of the Police Rules violates the overbreadth doctrine. A court should not strike down language as vague which limits the speech of public employees ". . . in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest." *Civil Service Commission v. National Association of Letter Carriers,* 413 U.S. 548, 579, 93 S.Ct. 2880, 2897, 37 L.Ed.2d 796 (1973). See *Arnett v. Kennedy,* 416 U.S. 134, 158–64, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) (plurality opinion). The language of section 10 is reasonably clear and specific: it simply prohibits employees of the department from making critical or derogatory statements "under any circumstances or in any manner whatsoever" regarding

the orders or instructions issued by superior officers. If an officer feels an order is inconsistent or unjust, he is to appeal to a higher authority in the department, otherwise he is to remain silent.

Although there is a substantial community interest in the maintenance of police discipline and a structured chain of command, section 10 is unnecessarily broad and may, by its very existence, cause employees of the department to refrain from constitutionally protected speech and expression. See *Broadrick v. Oklahoma*, 413 U.S. 601, 612–13, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). Although the regulation prohibits only a narrow category of speech, within this category it implements a wholesale gag order without requiring a finding that any city interest would be furthered thereby. Thus, the chief of police is vested with almost unlimited discretion in the enforcement of the rule and officers may be disciplined for discussing among themselves the merits of any order or instruction, even though such discussion may have no adverse effect on the maintenance of morale or discipline. Cf. *City of Madison v. Wisconsin Employment Relations Commission*, supra, —— U.S. at ——, n. 10, 97 S.Ct. 421. Since *Pickering* requires that the prohibition of employee speech must ordinarily be justified by a significant state interest, such an open-ended gag rule cannot stand. Compare *Magri v. Giarrusso*, supra, 379 F.Supp. at 357–58 with *Muller v. Conlisk*, 429 F.2d 901 (7th Cir. 1970) and *Flynn v. Giarrusso*, 321 F.Supp. 1295 (E.D.La.1971). Unlike *Arnett v. Kennedy*, supra, relied on by defendants, the regulation here is not directed primarily at unprotected conduct but focuses upon speech. See 416 U.S. at 159, 162, 94 S.Ct. 1633.

■ Finally, the court rejects plaintiff's claim for monetary damages against the individual defendants. The Supreme Court has established that executive officials are entitled to a qualified immunity commensurate with the scope of their responsibilities and discretion. See *Scheuer v. Rhodes*, 416 U.S. 232, 247, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). In the present case the defendants should be entitled at least to that immunity provided school officials in the context of imposing disciplinary measures against students, see *Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); accordingly, defendants are not liable for money damages "so long as they could not reasonably have known that their actions violated [plaintiff's] clearly established constitutional rights, and provided they did not act with malicious intention to cause constitutional or other injury." *Imbler v. Pachtman*, 424 U.S. 409, 419, 96 S.Ct. 984, 990, 47 L.Ed.2d 128 (1976). Because it does not appear that defendants could reasonably have known that their actions would violate plaintiff's constitutional rights and because the record is devoid of any evidence that defendants acted in bad faith, plaintiff is not entitled to monetary damages.[5]

For the foregoing reasons it is ordered, adjudged and decreed that:

1.) Defendants, their agents, servants or employees are hereby enjoined and restrained from taking disciplinary action against plaintiff pursuant to sections 9 and 10 of the Shelton Police Department Manual of Procedure insofar as such action restrains non-disruptive speech regarding the operation of the town's merit system;

2.) Section 10 is hereby declared void as unconstitutionally overbroad and defendants, their agents, servants or employees are enjoined and restrained from taking disciplinary action pursuant to it;

3.) Any and all mention of disciplinary action taken against plaintiff pursuant to sections 9 and 10 arising out of his letters of February 15 and July 9, 1974 shall be expunged from Officer Haurilak's personnel and other related records.

This opinion represents the court's findings of fact and conclusions of law pursuant to Rule 52 of the Fed.R.Civ.Pro.

---

5. Plaintiff also asks that this court declare section 9 to be void. However, plaintiff has failed to provide any explanation or arguments in support of this. Accordingly, the court must assume that the request has been abandoned.