Jack MULLER, Plaintiff-Appellant,

v.

James B. CONLISK, Harold Brown, James Dunworth, and William Hougesen, Defendants-Appellees.

No. 17880.

United States Court of Appeals, Seventh Circuit.

June 29, 1970.

John Henry Schlegel, David A. Goldberger, Alfred R. Lipton, Chicago, Ill., for plaintiff-appellant.

Raymond F. Simon, John J. George, Richard L. Curry, Acting Corp. Counsel of the City of Chicago, Chicago, Ill., for defendants-appellees, Marvin E. Aspen, Asst. Corp. Counsel, of counsel.

Before HASTINGS, Senior Circuit Judge, and KILEY and KERNER, Circuit Judges.

HASTINGS, Senior Circuit Judge.

Pursuant to Title 42 U.S.C.A. § 1983 and Title 28 U.S.C.A. § 2201, plaintiff Jack Muller, a detective employed by the City of Chicago Police Department, brought this action in the district court against defendants, Superintendent of the Chicago Police Department and members of the Disciplinary Board of the Department. He sought declaratory and injunctive relief from the operation of Police Department Rule 31 and a reprimand given to him under such rule. He alleged that the rule, on its face and as applied, infringes his right of free speech guaranteed by the First and Four-

teenth Amendments to the United States Constitution. The district court dismissed the complaint for failure to state a cause of action. We reverse.

In October, 1967, while assigned to an auto theft unit, plaintiff discovered that members of another such unit had converted to their own use certain stolen property recovered by them in the course of their duties. He immediately reported the specific facts known to him to his Commander, who in turn informed the city-wide Commander of the Auto Theft Division. Plaintiff waited five days and saw no indication that the charges were being investigated. He then personally presented the charges, in writing, to the Superintendent of the Police Department.

Approximately three weeks later, plaintiff was interviewed by television news reporters concerning the charges. He had not previously disclosed the existence or contents of the charges to the news media. During the interview, a reporter asked plaintiff why he had not gone to the Police Department's Internal Inspection Division (IID) with the charges. Plaintiff replied: "The IID is like a great big washing machine. Everything they put into it comes out clean." Plaintiff had in the past reported a similar charge to the IID and based his comment on what he thought was the unsatisfactory handling of his past report.

Some months later, plaintiff was twice summoned before the Deputy Chief of Detectives of the Police Department to be orally reprimanded for his comment to the news media. He refused to accept the oral reprimand and demanded a hearing before the Department's Disciplinary Board.

After a hearing, the Disciplinary Board found plaintiff had violated departmental Rule 31, which prohibits policemen from: "Engaging in any activity, conversation, deliberation, or discussion which is derogatory to the Department or any member or policy of the Department."

The Board ordered that a written reprimand be placed in plaintiff's official police service record. This record would be reviewed in connection with any future promotion for which plaintiff may be considered and the reprimand might limit his opportunities for advancement in the Department. The Board further ordered plaintiff "to henceforth desist from any derogatory comments reflecting on the image or reputation of the Chicago Police Department."

The district court found that the alleged restriction on plaintiff's federally protected right of free speech caused by the reprimand was so "marginal" that Count I of the complaint, requesting that the reprimand be expunged from his record, failed to state a cause of action under 42 U.S.C.A. § 1983. The court further found that "since plaintiff cannot complain about the reprimand, Count II [challenging the constitutionality of Rule 31 on its face] asks for an advisory opinion concerning a future, hypothetical application of Rule 31." On this basis, the court also dismissed Count II.

We consider first the dismissal of Count II. The district court apparently concluded that plaintiff lacked standing to challenge Rule 31 on its face or that the controversy was not ripe for adjudication or both. These conclusions are based upon a strained construction of the true harm complained of in Count II. Contrary to the court's apparent assumption, Count II in no way depends upon the existence of the reprimand given to plaintiff and found by the court to be inconsequential. The allegation of harm in Count II is that: "Plaintiff is restricted in his right of free speech in that Rule 31 * * * is vague and overbroad in violation of the First and Fourteenth Amendments * * * so * * * that Plaintiff cannot tell what speech is proper and what is proscribed; and further, that it proscribes lawful speech."

▮ Plaintiff's standing to raise the constitutional question is clear on the basis of this allegation, even on the assumption that his conduct in the instant case was properly subject to departmental regulation by a narrowly drawn

rule. As stated by the Supreme Court in N.A.A.C.P. v. Button, 371 U.S. 415, 432–433, 83 S.Ct. 328, 337, 9 L.Ed.2d 405 (1963): "[T]he instant [rule] may be invalid if it prohibits privileged exercises of First Amendment rights whether or not the record discloses that the petitioner has engaged in privileged conduct. For in appraising a statute's inhibitory effect upon such rights, this Court has not hesitated to take into account possible applications of the statute in other factual contexts besides that at bar. * * * The objectionable quality of vagueness and overbreadth * * * [is due to] the danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application. Cf. Marcus v. Search Warrant, 367 U.S. 717, 733, 81 S.Ct. 1708, 1717, 6 L.Ed.2d 1127. These freedoms are delicate and vulnerable, as well as supremely precious in our society. The threat of sanctions may deter their exercise almost as potently as the actual application of sanctions. Cf. Smith v. California, supra, 361 U.S. [147] at 151–154, 80 S.Ct. [215], at 217–219 [4 L.Ed. 2d 205]; Speiser v. Randall, 357 U.S. 513, 526, 78 S.Ct. 1332, 2 L.Ed.2d 1460. Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity. Cantwell v. Connecticut, 310 U.S. 296, 311, 60 S.Ct. 900, 906, 84 L.Ed. 1213."

In Button, the Court found the plaintiff had standing to raise the vagueness and overbreadth challenge because "it is directly engaged in those activities, claimed to be constitutionally protected, which the statute would curtail." 371 U.S. at 428, 83 S.Ct. at 335.

In the instant case, Rule 31 stands as a "threat of sanctions" intended to inhibit the right of policemen to speak as freely as other citizens on matters of public concern. If, as alleged, it

sweeps too broadly, it has the effect of inhibiting constitutionally protected speech. Plaintiff is a member of the group at which Rule 31 is directed and, as such, his right to speak is presently subject to curtailment by Rule 31. This is sufficient to establish his standing to challenge the rule quite apart from any specific sanction which has been imposd upon him for its violation. Button, supra. See also Dombrowski v. Pfister, 380 U.S. 479, 486–487, 85 S.Ct. 1116, 14 L.Ed.2d 22 and Soglin v. Kauffman, 7 Cir., 418 F.2d 163, 166 (1969).

■ What we have said thus far largely disposes of any claim that Count II does not present a controversy ripe for adjudication. Again, we stress that plaintiff alleges a present infringement of his right to speak resulting from the mere existence of the allegedly overbroad rule and the threatened sanctions for its violation.[1] The Supreme Court has repeatedly recognized that because "freedoms of expression in general * * * are vulnerable to gravely damaging yet barely visible encroachments," Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 66, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963), the mere threat of the imposition of sanctions is sufficient present infringement to justify redress. See, e. g., Dombrowski, supra, 380 U.S. at 486, 85 S.Ct. 1116; Baggett v. Bullitt, 377 U.S. 360, 374, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964); Bantam Books, supra, 372 U.S. at 67, 83 S.Ct. 631; Button, supra, 371 U.S. at 433, 83 S.Ct. 328 and Thornhill v. Alabama, 310 U.S. 88, 97–98, 60 S.Ct. 736, 84 L.Ed. 1093 (1940).

On the merits, plaintiff argues that Rule 31 is both vague and overbroad. The rule prohibits "any activity, conversation, deliberation, or discussion which is derogatory to the Department * * *."

■ We think it clear beyond dispute that the rule is overbroad. In substance,

---

1. It may be noted that the sanctions *threatened* for violation of Rule 31 are not limited to reprimands. The Department may discharge a policeman for violation of this rule. That, in fact, was one of the possible sanctions in the instant case although the Department chose not to impose it.

it prohibits *all* criticism by policemen of the department. It may no longer be seriously asserted that public employees, including policemen, have no right to criticize their employer.

█ "[P]olicemen, like teachers and lawyers, are not relegated to a watered-down version of constitutional rights." Garrity v. New Jersey, 385 U.S. 493, 500, 87 S.Ct. 616, 620, 17 L.Ed.2d 562 (1967). They, like other public employees, enjoy the protection of the First Amendment. In Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), the Court dealt with the First Amendment right of public employees to speak on matters of public concern relating to their employment and with the right of the state, as an employer, to regulate the exercise of such right. The Court there was faced with critical statements made by a teacher concerning the way the school board had handled proposals for increased school revenue. Some of the statements involved were true, while others were false although not knowingly or recklessly so.

The Court concluded that no general standard could be fashioned in such situations and found that "the problem in any case is to arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." 391 U.S. at 568, 88 S.Ct. at 1734. The Court expressly held that the state could not entirely deny the right of its employees to criticize their employer. 391 U.S. at 568, 570, 88 S.Ct. 1731.

█ A major portion of defendants' brief is devoted to distinguishing *Pickering* by pointing out that policemen are different than teachers and that police departments are quasi-military forces dependent upon rigid internal discipline for their effectiveness. We cannot agree that such considerations make *Pickering* inapplicable. *See* Donovan v. Mobley, 291 F.Supp. 930 (D.C.Cal., 1968); Brukiewa v. Police Commissioner, 257 Md. 36, 263 A.2d 210 (1970); and In re Gioglio, 104 N.J.Super. 88, 248 A.2d 570 (1968). Rather, their possible effect is no more than to influence the balance which *Pickering* says must be struck in each case. To the extent that being a policeman is public employment with unique characteristics, the right of the employee to speak on matters concerning his employment with the full freedom of any citizen may be more or less limited. It is not, however, destroyed. *Pickering, supra,* 391 U.S. at 568, 88 S.Ct. 1731; *Garrity, supra,* 385 U.S. at 500, 87 S.Ct. 616.

Thus, it is clear that the First Amendment would reach and protect some speech by policemen which could be considered "derogatory to the department." Rule 31 on its face prohibits all such speech, even private conversation, and is for that reason unavoidably overbroad in violation of the First Amendment as it applies to the states through the Fourteenth Amendment. Accordingly, the district court erred in dismissing Count II. We need not consider plaintiff's alternate contention that Rule 31 is unconstitutional for vagueness.

█ Having determined that Rule 31 is unconstitutional on its face, it follows that the reprimand given plaintiff based upon an alleged violation of such rule must fall and should be expunged from his record and held to be of no effect. Accordingly, we do not reach the question raised in Count I that the rule is unconstitutional as applied to him. We see no need for a hearing on that issue.

The judgment of the district court is reversed and this cause is remanded to the district court with directions to enter judgment for plaintiff consistent with the views expressed herein.

Reversed and remanded with directions.