**Daniel SIMCOX, Plaintiff-Appellant,**

**v.**

**BOARD OF EDUCATION OF LOCK-PORT TOWNSHIP HIGH SCHOOL, DISTRICT NO. 205, WILL COUNTY, ILLINOIS, et al., Defendants-Appellees.**

**No. 18565.**

United States Court of Appeals, Seventh Circuit.

May 12, 1971.

Kiley, Circuit Judge, concurred with reservations and filed opinion.

Andrew J. Leahy, Chicago, Ill., Ligtenberg, DeJong & Leahy, Chicago, Ill., for plaintiff-appellant.

Michael D. Block, Joliet, Ill., Cirricione & Myszkowski, Joliet, Ill., for defendants-appellees.

Before KILEY and CUMMINGS, Circuit Judges, and MORGAN, District Judge.[1]

ROBERT D. MORGAN, District Judge.

This cause arose upon a complaint filed under the provisions of Section 1 of the Civil Rights Act of 1871, 42 U.S.C. 1983. The complaint alleged that plaintiff's constitutional rights had been violated by the action of the defendant, Board of Education, denying him a teaching contract for the 1969–70 school year.

A trial of the cause ended with a judgment adverse to plaintiff, based upon the trial court's findings that the defendants had acted in good faith in denying a contract to plaintiff and that

---

1. The writer of this opinion is sitting by designation from the Southern District of Illinois.

his constitutional rights had not been abridged. This appeal followed.

■ ■ The constitutional principles asserted in this case are well established. A public employee cannot be discharged or otherwise penalized because of his exercise of the right of freedom of speech as guaranteed by the First Amendment to the Constitution of the United States. *E. g.*, Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); Muller v. Conlisk, 429 F.2d 901, 904 (7 Cir. 1970); McLaughlin v. Tilendis, 398 F.2d 287, 288–289 (7 Cir. 1968). Any immunity which public officials enjoy in dealing with their employees is limited by the requirement that their actions *vis-à-vis* such employees be taken in good faith. McLaughlin v. Tilendis, *supra* at 290–291.

■ The principal thrust of plaintiff's argument is that the reasons stated by the Board for his dismissal are untenable and that, therefore, it must be inferred that plaintiff was, in fact, dismissed because of his exercise of First Amendment rights. He invokes the established rule that this court must make an independent examintion of the whole record to determine whether his constitutional rights were abridged. Such examination, however, cannot be a trial *de novo* as plaintiff seems to imply. Our examination is limited to the determination whether the findings of fact upon which the judgment rests are supported by the evidence. We may not re-examine findings of fact by the court below which are supported by substantial evidence. General Motors Corp. v. Washington, 377 U.S. 436, 441–442, 84 S.Ct. 1564, 12 L. Ed.2d 430 (1964).

The thrust of that argument also requires that we define the limits of our review at the outset of this opinion. The applicable State statute and its interpretation are significant only as a part of the factual background of the controversy.[2] Whether there was, or was not, compliance with the statute in this instance is a question of state law without federal significance. Our only province, as respects the reasons given by the Board for plaintiff's dismissal, is to determine whether such reasons are so wanting in evidentiary support that it must be said that they are, in effect, a smoke screen hiding some undisclosed reason which was the real basis for defendants' action in dismissing plaintiff.

■ Plaintiff, who is certified by the State of Illinois as a school teacher, was employed by the defendant Board of Education as a counselor at Lockport West High School for the school years 1967–68 and 1968–69. Had he not been refused a contract for the 1969–70 school year, he would have attained tenure under the Illinois statute.[3] In February, 1969, the principal of Lockport West delivered a written recommendation to the defendant Board that plaintiff not be awarded a tenure contract. That recommendation was based upon the assertion that plaintiff had refused to perform duties not included within his contract without extra compensation. That conclusion was followed by factual recitals of instances of such refusal and the statement that, "I have received cooperation from Mr. Simcox only when great pressure has been brought to bear."

The Board accepted that recommendation on March 27, 1969. Plaintiff was

---

2. The Illinois statute provides that a teacher shall attain tenure after continuous employment for a probationary period of two school years, unless he is given written notice at least 60 days before the end of the second year "of dismissal stating the specific reason therefor." Ill.Rev. Stat.1969, c. 122, § 24–11. The statement of "reason" is a mandatory requirement, Donahoo v. Board of Education, 413 Ill. 422, 426, 109 N.E.2d 787 (1952), but it

requires only that the statement be sufficient to apprise the teacher of the "alleged deficiency" which was the basis for the Board's action. Wade v. Granite City Comm. Unit Sch. Dist. No. 9, 71 Ill. App.2d 34, 218 N.E.2d 19, 20 (1966). *Wade* suggests that facts supportive of the stated reason need not be given.

3. See Note 2.

advised of that action by a letter from the District Superintendent on March 29, 1969. The first paragraph thereof stated:

"This is to inform you that by official School Board action of March 27, 1969, the recommendation not to award you a third year contract was accepted. The stated reasons are lack of self-direction and lack of cooperation with administration in following prescribed procedures."

The letter continued with references to "your resistance" to attendance at evening parent meetings, refusal to submit weekly guidance reports, refusal to assist in an identification photo project, and failure to assume compensated extra teaching duties in emergency situations.[4] Plaintiff stresses those four factual recitals as the only "reasons" given for his dismissal. Individual decapitation of each is attempted by argument and recitation of certain evidence. The argument culminates with the conclusion that each of such four "reasons" must fall, and, ergo, it must be inferred that plaintiff was discharged because of his activities which were protected by the First Amendment.

We must reject the argument. Emphasis upon the supporting recitals ignores the clear import of the dismissal notice and the stated reasons for dismissal therein contained. It also ignores the import of the evidence adduced in the court below upon which this judgment rests.

The evidence quite clearly reveals the following background facts. During plaintiff's employment at Lockport, there were several areas of contention between school officials and the counselors, in general, and plaintiff in particular. Counselors were expected by the school officials to attend evening parent meetings at junior high schools within the District. It appears from the evidence that several counselors were erratic in their attendance at such meetings, and that plaintiff refused to attend one such meeting when requested to attend. He later told the principal that he had refused to attend because attendance was a duty not included in his contract.

A second area of contention related to the school's requirement that counselors submit weekly guidance reports to school officials. The record clearly supports the conclusion that all counselors at Lockport West were opposed to these re-

4. The text of that letter, omitting the first paragraph which is quoted above, follows:
"It is unfortunate for the students of our district that your employment as a staff member has been less than satisfactory and has required this action.
"During your three semesters of employment as a non-tenure staff member, it is apparent that your 'differences of opinion' with the principal as you claim have only resulted in your performing your share of necessary duties when great pressure has been brought to bear.
"There are many duties involved with being a contributing staff member that surround the specific primary functions of the staff member. Such duties, while necessary in the total educational process, cannot be written into a contractual obligation, but instead depend on the professional attitude, ethics, and self direction displayed by the staff member in co-operating with the administration in the school operation.

"Specifically, your resistance to attend evening parent meetings and refusal to submit weekly reports without written directives of your superiors, when such duties are outlined in the guidance counselors handbook, are serious.
"Your failure to assist when requested to help in the identification picture project, and your failure to respond to requests in assuming (compensated) extra teaching duties in emergency situations, are likewise serious and reveal an attitude and style that are not desirable in an educator. Since this pattern has continued for a period longer than your employment in District No. 205, it would appear to be irremedial.
"It is hoped that you will find a new job in new surroundings that will be more suitable to your specific talents. It is also hoped that time and effort on your part will reduce the tension that is created with your superiors."

ports because the required content thereof was quantitative only, and they believed that the reports could serve no useful purpose. At one meeting of plaintiff and another counselor with the District Guidance Director, the Director was told that if he wanted such written reports to put the directive to that effect in writing. A written directive was issued, but neither plaintiff nor the second counselor who had made the demand were singled out therein. Plaintiff's performance with respect to submission of such reports apparently was no worse than that of several other counselors who testified at the trial.

Other areas of discontent among the counselors related to their dissatisfaction with the facilities provided for them and their belief that they should be entitled to extra compensation.

At the beginning of the 1968–69 year, plaintiff was asked by the Principal to assist in the taking of student photographs for a newly adopted identification procedure. He refused. Other counselors, teachers and office personnel did aid in the program.

There were several discussions between plaintiff and his Principal related to the necessity for the assumption by the teaching staff of extra, uncompensated duties. Plaintiff took the position that he had no obligation to undertake any duty not set forth in his contract.

Plaintiff took an active role in the Lockport Teachers Organization, hereinafter LTO, which was recognized by the Board in February, 1968, as a collective bargaining representative for the District's teachers. He became a member of the LTO negotiating committee in March, 1968. He drafted a memorandum which was submitted by the LTO committee to the Board and other school officials proposing changes in the counselor program for the District.

Plaintiff and a Mr. Moore acted as the spokesmen for all counselors of the District. In that capacity, they had several meetings with school officials and a committee of the Board. Some degree of acrimony apparently did attend certain of those meetings.

It is plaintiff's contention that the real reason for his dismissal was his LTO and counselor representative activities. Unquestionably, such activities are protected by the First Amendment, McLaughlin v. Tilendis, *supra* at 288, 289, and dismissal because of the exercise of such rights would be constitutionally impermissible. We are convinced, however, upon this record that plaintiff's contention is untenable.

There is no evidence to indicate any animosity by the Board to LTO or its members. It recognized the organization. It met with its representatives. Mr. Moore, who was an officer of LTO, was promoted to the position of department head at about the same time that plaintiff was dismissed.

On the other hand, there is substantial evidence that plaintiff's attitude toward his own personal performance of duties deemed necessary by the school administration was diametrically opposed to the views and directions of the administrators. Though some of the teachers considered such extra duties as voluntary, it is certain that the school administration felt that teachers were obligated to accept some such duties when they were necessary to the interests of the school system and its students. The administration's view is summarized in the recommendation that plaintiff not be awarded a contract, as follows:

"In the past few years we have been operating with a vastly increased enrollment and also a financial burden due to the failure of the bond issues. The district is unable to pay for every extra-curricular duty which a teacher performs. Most of the teachers in our school have conscientiously and loyally performed not only their regular duties, but have devoted a great deal of extra time to the school in order to better serve the interests of the children.

"In fairness to the students and to the members of our staff who perform as stated, above, I cannot recommend that a teacher attain tenure who has, to date, refused to cooperate with a spirit of willingness and with a sense of responsibility to the district. * * * "

The statement of that view in the dismissal notice merits repetition here:

"There are many duties involved with being a contributing staff member that surround the specific primary function of the staff member. Such duties, while necessary in the total educational process, cannot be written into a contractual obligation, but instead depend on the professional attitude, ethics and self direction displayed by the staff member in cooperating with the administration in the school operation."

The evidence adequately supports the conclusion that the Board elected to dismiss plaintiff because of his "lack of self direction * * * and cooperation" in relation to extra-curricular duties, as stated to him in his notice.

This factual situation is not comparable to those in the cases upon which plaintiff places principal reliance.

Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), involved the discharge of a tenured teacher by this same Board of Education solely because he had written a letter for publication which was critical of certain school board policies. Muller v. Conlisk, *supra*, involved a reprimand of a Chicago policeman solely because he had made certain public statements which were critical of the Chicago Police Department. McLaughlin v. Tilendis, *supra*, held sufficient a Section 1983 complaint which alleged that non-tenure teachers had been dismissed for the sole reason that they had joined a teachers union. Both Johnson v. Branch, 364 F. 2d 177 (4 Cir. 1966), and Chambers v. Hendersonville City Board of Education, 364 F.2d 189 (4 Cir. 1966), rest upon a finding of racial discrimination in the discharge of Negro teachers.

 Plaintiff's further argument that he was denied equal protection of the laws is equally wanting in merit. Obviously, he was treated differently than were other teachers. He was dismissed, while they were retained. Other counselors shared plaintiff's views regarding the operation of the department, yet they were retained. One was promoted. The record discloses that some of them had tenure. It is silent as to others. The record does not suggest, however, that those retained teachers shared plaintiff's declared view that there was no obligation to perform any duty which was not written into the teacher's contract. There is nothing to suggest that the Board's action was irrational or that it was not "free from invidious discrimination." Dandridge v. Williams, 397 U.S. 471, 486–487, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). Equal protection requirements were satisfied.

There is no evidence in this record to support the contention that the Board did not act in good faith. To the contrary, the record amply supports the conclusion that the Board made a *bona fide* value judgment based upon information available to it and that it fairly exercised a discretion with which it was clothed in performance of its important public responsibility.

We hold that the findings of fact that defendants acted in good faith and that there was no violation of plaintiff's constitutional rights are adequately supported by this record.

The judgment below is affirmed.

KILEY, Circuit Judge (concurring).

I concur in the court's opinion, but with reservations.

I take it that the district court's opinion, though expressed otherwise, is that the plaintiff had failed to prove to the court's satisfaction that plaintiff was discharged for his union activities and consequently not in violation of his First

Amendment right to freedom of association. I concur in our court's opinion because I think that the district court's inference was justified by the record.

I decline to approve any implication, if any there be in the opinion, that a school board's good faith judgment in terminating a counselor's employment is per se justified, even though the termination violates a constitutional right. Furthermore, I would not approve an implication that a school board's good faith adoption of a principal's recommendation based on arbitrary or unconstitutional grounds would be justified.

This court's references to plaintiff's "duties" imply that plaintiff had an obligation not arising from his employment contract, but from the circumstances under which the defendant board was operating at the time the counselors and teachers were being asked to cooperate. I reserve judgment as to whether plaintiff had "duties."

I am not clear as to what "self-direction"—as a reason for termination of employment—means in the context of this case, although I think that the record here does support a finding that plaintiff did not cooperate. However, it is my view that during a probationary period a school board is not limited in its determination that a counselor has proven his worth—before achieving tenure—to the school system by a showing of mere competence as counselor. Beyond competence and contractual duties there is a grey area in which the board should have discretion to determine that a technically competent teacher or counselor may nevertheless not be suitable for the school system. Insistence of a school board in this grey area upon complete unquestioning cooperation and compliance could have a suffocating, repressive effect upon the quality of the school system, yet only in the most extreme cases, in my opinion, would courts be justified in finding an abuse of board discretion. The defendant board members are se-

lected by the residents of the community, and the community will get the school system that the members it elects provide.