Terrance O'BRIEN, Plaintiff-Appellant,

v.

TOWN OF CALEDONIA, Town of Caledonia Fire and Police Committee, and Gerd Hodermann, Chief of Police, Town of Caledonia, Defendants-Appellees.

No. 83–1656.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 9, 1983.

Decided Nov. 8, 1984.

Richard L. Zaffiro, Milwaukee, Wis., for plaintiff-appellant.

Raymond J. Pollen, Riordan, Crivello, Carlson, Mentkowski & Henderson, Milwaukee, Wis., for defendants-appellees.

---

Before CUMMINGS, Chief Judge, WOOD, Circuit Judge, and CAMPBELL, Senior District Judge.[*]

WILLIAM J. CAMPBELL, Senior District Judge.

Terrance O'Brien, plaintiff below, appeals the District Court's denial of his Motion for a Preliminary Injunction. The underlying suit alleges that the defendants, the Town of Caledonia, its Fire and Police Committee, and its Chief Of Police, Gerd Hodermann, unlawfully retaliated against the plaintiff for his exercise of his First Amendment rights. The alleged retaliation took the form of incommunicado interrogations of the plaintiff, institution of disciplinary proceedings against him, and other forms of harassment. The complaint requested declaratory and injunctive relief as well as damages. Plaintiff also sought a preliminary injunction to restrain the defendants from pursuing the disciplinary action and engaging in any other form of harassment. After a lengthy evidentiary hearing the District Court declined to enter a preliminary injunction, concluding that the plaintiff had failed to demonstrate irreparable harm. For the reasons stated below, we reverse.

O'Brien is a police officer employed by the Town of Caledonia. During the summer of 1981 he was involved in two controversial incidents. In one he arrested a Peter Mark and charged him with disorderly conduct and resisting an officer. Thereafter, defendant Hodermann concluded that the latter charge was inappropriate and, after speaking to the Town Attorney, had it dismissed. The disorderly conduct charge was pursued, however, and a fine was imposed on Mark. The other incident involved Paul Garr, the Supervisor for the Town of Caledonia. O'Brien conducted an investigation regarding an altercation involving Garr and decided to issue citations against him for battery and obstruction. Chief Hodermann, however, believed that the investigation was incomplete and or-

* The Honorable William J. Campbell, Senior District Judge of the Northern District of Illinois, is sitting by designation.

dered O'Brien not to issue the citations. Nonetheless, the plaintiff did issue the citations but they were subsequently dismissed by the police department.

Concerned that the dismissals of the citations in those situations were motivated by political considerations and fearing for his job, O'Brien spoke with his attorney. Thereafter, he also discussed the incidents with the local District Attorney, the Chief Judge of the Racine County Circuit Court, and the FBI office. He also responded to certain questions from the media. The FBI conducted an investigation which did not reveal any criminal misconduct. Thereafter, Chief Hodermann initiated an internal investigation into O'Brien's conduct. A major focus of the inquiry was whether O'Brien had violated Section X of the Department Manual of the Caledonia Police Department which provides in pertinent part:

CONFIDENTIALITY, INFORMATION

4. CONFIDENTIAL INFORMATION. Members and employees of the Department shall treat as confidential the official business of the Department. They shall not impart it to anyone except those with an official need to know, or as directed by their commanding officer, or under due process of law; and they shall not make known to any persons, whether or not a member or an employee of the Department, any special order which they may receive, unless required by the nature of the order. The Chief of Police shall establish policies concerning dissemination of information to representatives of the media.

5. REVEALING NAME OF COMPLAINANT. Whenever a complaint is made by a citizen, no member or employee of this Department shall reveal the name of the complainant except under due process of law when it is absolutely necessary to do so in the performance of his duty.[1]

Another area of concern involved Section V of the Manual which provides in pertinent part:

RULES OF CONDUCT

A. CIVILITY, COURTESY, RESPECT

1. RESPECT. No member or employee shall, on or off duty, by word or deed, evince disrespect, discourtesy or criticism of a supervisory officer or fellow personal [sic].

\* \* \* \* \* \*

5. CRITICISM. Members and employees of the Department shall not speak in a critical or derogatory manner to any person outside of the Department, regarding the orders or instructions issued by supervisory officers.

Pursuant to this investigation, the plaintiff was interrogated on four occasions for a total of approximately six hours. The questioning occurred in Chief Hodermann's office and was conducted by him with assistance from Sergeants Knoll and Stanton. O'Brien was not permitted to have his attorney attend the sessions, however, a union representative was present. Thereafter, Chief Hodermann filed charges against O'Brien before the Police & Fire Committee of the Town of Caledonia alleging, *inter alia*, violations of Sections V and X. (The charging document is reproduced in the Appendix.)

In support of his Motion for a Preliminary Injunction, plaintiff argued that Section X was unconstitutional on its face and as applied, and that the interrogations and disciplinary charges were intended to punish him for his exercise of his First Amendment Rights.

The District Court received numerous affidavits and heard extensive testimony on

---

**1.** Every quotation of this Section in the record contains some form of typographical error; the complaint omits the "it" in the second sentence of Paragraph 4 and the defendants' submission (the recitation of the provisions appended to the disciplinary charges) quotes the second sentence as beginning, "They shall not impart to it any-

one ..." The Department Manual of the Caledonia Police Department was not offered as an exhibit at the evidentiary hearing. We have taken the liberty of correcting the error in this opinion. However, it may be that some error exists in the manual.

the factual background of the case. The court's memorandum decision contains detailed findings of facts, none of which are challenged on this appeal. In analyzing the case the court noted the four relevant factors to be considered in determining the propriety of issuing a preliminary injunction:

(1) whether the plaintiff will have an adequate remedy at law or will be irreparably harmed if the injunction does not issue;

(2) whether the threatened injury to the plaintiff outweighs the threatened harm the injunction may inflict on the defendant;

(3) whether the plaintiff has at least a reasonable likelihood of success on the merits; and

(4) whether the granting of a preliminary injunction will disserve the public interest.

*O'Connor v. Board of Education*, 645 F.2d 578, 580 (7th Cir.1981), *cert. den.* 454 U.S. 1084, 102 S.Ct. 641, 70 L.Ed.2d 619 (1981).

All those factors were not discussed in the decision, however, as the district judge determined that plaintiff's failure to demonstrate irreparable injury mandated denial of the motion:

The plaintiff asserts that unless the injunction issues in this case his First Amendment rights will continue to be chilled by further intimidating conduct of the police department and by disciplinary action taken before the Fire and Police Committee for his alleged violations of Section X of the police manual. The record, however, does not indicate that, upon his return to work, Terrance O'Brien is threatened with demotions or further interrogations as a result of incidents involved in this case. Rather, it is urged that the Caledonia Fire and Police Committee at any time may begin its hearing on the O'Brien charges; this hearing then could lead to the disciplining or termination of the plaintiff for activities protected under the First Amendment.

Past irreparable harm will not sustain a preliminary injunction. The plaintiff simply has failed to demonstrate in the record that he is presently suffering or is about to suffer further irreparable harm. It may be that Mr. O'Brien is entitled to compensation for injuries allegedly caused by the defendants. Nevertheless, past injury is not a substitute for imminent threats of specific future constitutional violations. Memorandum Decision (March 30, 1983, pp. 7–8.)

We first analyze O'Brien's likelihood of success on the merits. He is charged, *inter alia*, with violating Sections V–A–1 and 5 of the Manual, quoted pp. 3–4. A very similar provision was held to be overbroad and therefore unconstitutional on its face in *Muller v. Conlisk*, 429 F.2d 901 (7th Cir.1970):

We think it clear beyond dispute that the rule is overbroad. In substance, it prohibits all criticism by policemen of the department. It may no longer be seriously asserted that public employees, including policemen, have no right to criticize their employer. 429 F.2d at 903–904

*See also, Flynn v. Giarrusso*, 321 F.Supp. 1295 (E.D.La.1971). Based on that determination this Court expunged the reprimand given to Muller because of his alleged violation of the Department's rule; *see also, Waters v. Chaffin*, 684 F.2d 833 (11th Cir.1982).

For the reasons stated in *Muller*, Sections V–A–1 and 5 of the Department Manual of the Caledonia Police Department are also overbroad and unconstitutional on their face. Those rules clearly prohibit all criticism of the Department regardless of the context, forum, or public interest involved. The First Amendment protects a wide spectrum of such activity based not only on the policeman's right to express his views but also on the public's right to be informed of the operations of its government. While not all means of criticism by a policeman are protected by the First Amendment, *see Kannisto v. City and County of San Francisco*, 541 F.2d 841 (9th Cir.1976), a policeman's rights must be

vigilantly protected because he or she is "extraordinarily able to inform the public of deficiencies in this important governmental department," *Pickering v. Board of Education*, 391 U.S. 563, 572, 88 S.Ct. 1731, 1736, 20 L.Ed.2d 811 (1968).

O'Brien is also charged with violating Section X–4. An identical provision, Milwaukee Police Department Rule 29, § 32, was found to be facially valid in *Hanneman v. Breier*, 528 F.2d 750 (7th Cir.1976). However, this Court concluded that the application of that rule in that case violated the First Amendment. Applying the test provided in *Pickering, supra,* the Court phrased the relevant inquiry as whether the defendant can "show a state interest in confidentiality applicable on these facts which outweighs the public and individual interests in the particular statements made," 528 F.2d at 754. In *Hanneman* the plaintiffs were members of the policeman's union who wrote and circulated a letter protesting the investigation of the union by the police department. They had been previously advised that the investigation was to be considered confidential and they were also subject to Department Rule 29, § 32. The secrecy of the investigation had already been compromised by a newspaper article published prior to the circulation of the letter. Nonetheless, the police department successfully brought charges against the plaintiffs for violating, *inter alia,* Rule 29, § 32. This Court determined that the disciplinary actions violated plaintiffs' First Amendment rights: ˙

> Of course departmental discipline may be undermined when police officers disobey an official regulation and an express order not to disclose police business. The department's general interest in discipline alone, however, does not outweigh the individual and public interest in the subject of plaintiffs' September 17 letter. [Citation omitted.] 528 F.2d at 755

■ In view of *Pickering* and *Hanneman,* it appears that O'Brien has a sub-stantial likelihood of success on the merits with regard to the application of Section X–4. Applying the balancing test of *Pickering,* the factors weigh heavily in O'Brien's favor. The subject matter of his communications, i.e., his perception of potential graft and corruption, is deserving of vigilant protection by the First Amendment.[2] Furthermore, the public's interest in being informed of serious governmental misconduct is very great. These two factors appear to weigh more heavily in favor of O'Brien than they did with respect to the plaintiffs in the *Hanneman* case. The Department's interest in discipline, however, is entitled to about the same weight it received in *Hanneman.* That is, while we do not wish to encourage disobedience in public employees, neither can we permit a governmental body to insulate itself from public scrutiny by declaring all its official business to be confidential. It appears that O'Brien's alleged breach of the confidentiality rule was necessary to the presentation of the important public issues and there was no evidence that it was gratuitous or manipulative.

The limitations on the *Pickering* balancing test expressed in *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), do not alter our conclusion. In *Connick* the Court emphasized the government's legitimate interest in controlling employees' communications which are disruptive of internal operations. Furthermore, the public's interest in the subject matter of the communication was deemed to be of limited weight when the topic was primarily a private concern of the employee. Neither of these considerations weigh against O'Brien in this case. The evidence indicates that O'Brien took his concerns to the appropriate external authorities and any disruption caused thereby must be accepted as incidental. Furthermore, as discussed previously, the subject matter of O'Brien's disclosure was of great public interest and cannot be considered to have been dominated by the co-existing private

---

**2.** It does not matter whether or not O'Brien's suspicions were subsequently demonstrated to be correct. His speech is entitled to First Amendment protection unless it contained false statements knowingly or recklessly made, *see, Pickering,* 391 U.S. at 574, 88 S.Ct. at 1737.

concern, i.e., O'Brien's retention of his employment.

We note various other constitutional infirmities in the charges filed against O'Brien which increase his likelihood of success on the merits. The charges against him are introduced with the following preamble:

> "That O'Brien engaged in conduct disregarding orders and *in conduct leading to serious discredit to the Town* in that: ..." [Emphasis supplied.]

Additionally, Charge G states:

> "That subsequent to August 13, 1981, O'Brien failed to take appropriate action to avoid publication of an investigation by the Federal Bureau of Investigation *thus causing serious discredit to the Department and the Town."* [Emphasis supplied.]

The highlighted language is functionally identical to the phrase "Conduct ... detrimental to the service" found to be unconstitutionally vague in *Bence v. Breier*, 501 F.2d 1185 (7th Cir.1974). That case also involved alleged violations of police regulations. The Court stated:

> On its face, the rule proscribes only conduct which is both "unbecoming" and "detrimental to the service." It is obvious, however, that any apparent limitation on the prohibited conduct through the use of these qualifying terms is illusory, for "unbecoming" and "detrimental to the service" have no inherent, objective content from which ascertainable standards defining the proscribed conduct could be fashioned. 501 F.2d at 1190

Based on the vagueness argument, the Court upheld the District Court's order requiring the police department to expunge the reprimands filed against the plaintiffs in that case. We believe that the phrase "leading to serious discredit to the Town"

is similarly vague as it lacks objective criteria and can only be subjectively applied.

■ Additionally, Charge H states:

> "That O'Brien failed to follow grievance procedure having felt aggrieved by orders from a supervisory officer."

At oral argument counsel for the appellees suggested that if O'Brien felt the citations were dismissed improperly by Chief Hodermann he was required to file an internal grievance prior to expressing his concerns to any other agency or persons. However, counsel for the appellees was forced to concede that First Amendment protection has never required the exhaustion of administrative remedies. The absurdity of such a requirement is evident. The First Amendment is designed to encourage effective debate and encompasses the public's right to information. As discussed previously in the context of the confidentiality rule, governmental bodies may not restrict the flow of information to the public solely on considerations of discipline or internal operating procedures.

In summary, it appears that O'Brien has a strong likelihood of success on the merits of his claim that at least some of the charges brought against him violate the First Amendment.[3]

The Court must also analyze the public interest in determining the wisdom of entering a preliminary injunction. In the context of a First Amendment case, some consideration of this factor is implicit in addressing the likelihood of success on the merits. Of course, the public has a strong interest in the vindication of an individual's constitutional rights. Furthermore, the public has an interest in encouraging the free flow of information and ideas, especially when it relates to the operations of its government. This interest is also implicated when the situation involves the punishing of a person who has contributed to that flow of information.

---

**3.** Appellant need not, of course, demonstrate that every one of the charges involves a violation of his First Amendment rights in order to be entitled to some form of preliminary relief. Conversely, in an appropriate case, defendants may be entitled to pursue specific severable charges that are unrelated to the constitutional issues. However, in such a situation, defendants may not wish to pursue the disciplinary charges in a piecemeal fashion. For this and other reasons we do not speculate on the propriety of such a severance in this case.

The balance of harm factor requires consideration of the Police Department's interest in proceeding with the disciplinary action. We note that Chief Hodermann stated at the evidentiary hearing that the internal investigation of O'Brien had been completed.[4] Thus, enjoining further action in the disciplinary proceeding would not hinder the collection of evidence by the department. The only effect of the preliminary injunction would be to delay the presentation of the charges to the Caledonia Fire and Police Committee. But any disciplinary action by the committee based in part on the plaintiff's protected activity would be constitutionally defective, *see Cook County College Teachers Union Local 1600 A.F.T. v. Byrd,* 456 F.2d 882, 888 (7th Cir.1972), *cert. den.* 409 U.S. 848, 93 S.Ct. 56, 34 L.Ed.2d 90 (1972), *reh. den.* 414 U.S. 883, 94 S.Ct. 29, 38 L.Ed.2d 131 (1973). We have already determined that two of the regulations plaintiff is charged with violating are overbroad. There is a strong likelihood that another regulation was unconstitutionally applied. Other constitutional violations are suggested by the record. In view of these problems with the disciplinary charges, it would not greatly harm the defendants to hold the internal proceedings in abeyance pending resolution of the constitutional issues. To permit them to proceed could very likely result in an exercise in futility by the committee.

Finally, we must determine whether or not the plaintiff demonstrated irreparable harm. The District Judge concluded that O'Brien had demonstrated he had been injured in the past and might be injured in the future; but the Court found no existing irreparable harm. However, a form of injury not considered by the trial judge was the ongoing chilling effect that the disciplinary charges could have on the plaintiff's exercise of his First Amendment rights.

Even the temporary deprivation of First Amendment rights constitutes irreparable injury, *Citizens for A Better Environment v. City of Park Ridge,* 567 F.2d 689, 691 (7th Cir.1975). The impending nature of the charges is sufficient to cause a chilling effect on plaintiff's rights:

> The threat of sanctions may deter their [First Amendment rights] exercise almost as potently as the actual application of sanctions. [Citations omitted.] *N.A. A.C.P. v. Button,* 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963); *see also, Dombrowski v. Pfister,* 380 U.S. 479, 486, 85 S.Ct. 1116, 1120, 14 L.Ed.2d 22 (1965).

Thus, this situation is appropriate for the application of the presumption of irreparable harm discussed in *Schnell v. Chicago,* 407 F.2d 1084, 1086 (7th Cir.1969). In this context that means that the plaintiff need not demonstrate that he will actually be restrained from fully exercising his First Amendment rights in order to demonstrate irreparable injury. When the threat of sanctions is so imminent, we must presume a deprivation of the First Amendment rights. Therefore, we conclude that the appellant carried his burden of showing irreparable injury.

In summary, having considered all the factors involved in determining the propriety of issuing the preliminary injunction, we conclude that the balance weighs heavily in favor of the plaintiff. Therefore, we reverse the District Court and remand the case for entry of a preliminary injunction which restrains the prosecution of the disciplinary charges against appellant pending resolution of the constitutional issues in this case.

## APPENDIX

STATE OF WISCONSIN : RACINE COUNTY : TOWN OF CALEDONIA

Before the POLICE & FIRE COMMITTEE
of the Town of Caledonia

**4.** The district court declined to enter an injunction precluding further interrogations of the appellant by the appellees. Based on this testimony, that determination was not an abuse of discretion since such relief was unnecessary.

IN THE MATTER OF                        :

TERRANCE O'BRIEN,                       :

    An Officer of the Town of          :
    Caledonia Police Department

CHARGES
AGAINST
A SUBORDINATE

To: The Honorable Chairman,
    Police & Fire Committee
    Caledonia Town Hall
    6922 Nicholson Road
    Caledonia, Wisconsin

PLEASE TAKE NOTICE that I, GERD HODERMANN, Chief of the Police Department of the Town of Caledonia, do hereby prefer charges against Police Officer Terrance O'Brien, a member of this Department, which charges arise from the fact that said officer violated the provisions of the Department Manual of the Caledonia Police Department.

That specifically Officer O'Brien has violated Section IV, Police Officer—Duties and Responsibilities, paragraphs 1, 3 and 4; Section V, Rules of Conduct, paragraphs A, 1, 5 and 6; Section VI, Duty to Obey, paragraphs 1 and 3; Section VII, Performance of Duty, paragraphs 4, 6, 16 and 17; Section X, Confidentiality, Information, paragraphs 4, 5 and 8; and, Section XIV, Miscellaneous, paragraph 6, which Sections are set forth at length hereafter.

That these charges are based upon the records, reports and investigative notes and memorandum of the Department, copies of which are attached hereto and incorporated herein by reference.

That Officer O'Brien has violated said Sections in the following manner:

That Officer O'Brien engaged in conduct disregarding orders and in conduct leading to serious discredit to the Town in that:

    A. On or about July 17, 1981, O'Brien was ordered to desist from further participation or discussion of the Peter Mark case; contrary to orders and in September and October, 1981, O'Brien did discuss the Peter Mark case with others and incorporated the details of the Peter Mark case in a written document which was disseminated to others.

    B. On or about August 12, 1981, O'Brien was ordered not to prepare citations regarding the Jarr-Chaptman case; contrary to orders O'Brien prepared citations.

    C. On or about August 13, 1981, O'Brien was ordered to desist from further participation or discussion of the Jarr-Chaptman case; contrary to orders O'Brien continued participation in the case by, among other things, contacting and interviewing the principals, and incorporating the details of the case in a written document which was disseminated to others.

    D. On and after August 12, 1981, O'Brien permitted inspection of and/or delivered copies of Department records and reports to unauthorized personnel, among others, Supervisors of the Town of Caledonia; that said reports and records contained the name of the principals and complainant.

    E. On and after July 14, 1981, O'Brien discussed with an attorney for the Town the Peter Mark case in such manner as to evince a disrespect of a superior officer.

    F. On and after August 13, 1981, O'Brien discussed with a Town Supervisor orders he had received from a superior.

    G. That subsequent to August 13, 1981, O'Brien failed to take appropriate action to avoid publication of an investigation by the Federal Bureau of Investigation thus causing serious discredit to the Department and the Town.

H. That O'Brien failed to follow grievance procedure having felt aggrieved by orders from a supervisory officer.

I. That O'Brien engaged in conduct, to-wit: the photographing of the office of the Chief of Police while on duty which conduct did not relate to police business.

J. That O'Brien failed to keep securely in his possession records of the Department in the matter of Kenneth Nixa.

K. That O'Brien failed to keep his weapon servicable and loaded while on duty.

L. That O'Brien while on duty departed from police business to pursue his own purposes by going to the residence of Cathy Smith.

M. That O'Brien failed to write and complete the report regarding his automobile accident of June 8, 1981, before he went off duty.

N. That O'Brien failed to follow directives and orders of a superior officer with respect to sexual assault complaint no. 6380 on or about December 12, 1981.

Dated this 30 day of July, 1982.

/s/ GERD HODERMANN
Gerd Hodermann, Chief of Police
Town of Caledonia