Robert COHEN, M.D., Plaintiff,

v.

COUNTY OF COOK, ILLINOIS and Terrence Hansen, Director of Cook County Hospital, Agnes Lattimer, M.D., Medical Director of Cook County Hospital, Gerald Burke, M.D., Chairman, Department of Medicine of Cook County Hospital, and Bashir Mamdani, M.D., Assistant Chairman, Department of Medicine of Cook County, all individually and in their official capacities, Defendants.

No. 87 C 8983.

United States District Court, N.D. Illinois, E.D.

Jan. 8, 1988.

**548**

Peggy A. Hillman, Chicago, Ill., for plaintiff.

Elizabeth Reidy, Asst. State's Atty., Chicago, Ill., for defendants.

### MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiff Dr. Robert Cohen, a third-year Pulmonary Fellow at Cook County Hospital (CCH), applied in February, 1987, for a vacant position as attending physician at the CCH Division of Pulmonary Medicine. His application, however, remains dormant on the desk of the chairman of the Department of Medicine, defendant Dr. Gerald Burke (Dr. Burke). Plaintiff maintains that defendants refuse to process his application and attempt to eliminate the pulmonary attending physician position, thereby preventing pursuit of his career goal—all in response to plaintiff's past participation in protests over various hospital policies. He brings a civil rights action pursuant to 42 U.S.C. § 1983, claiming that CCH administrators are unlawfully retaliating against him for the exercise of his First Amendment rights. Defendants argue that the proposal to delete that position is for valid budgetary concerns unrelated to plaintiff's speech.

Plaintiff seeks a preliminary injunction which

a. Orders defendants immediately to process plaintiff's application to become an Attending Physician in the Division of Pulmonary Medicine at Cook County Hospital;

b. Restrains defendants from taking any further action to eliminate the attending physician position in the Division of Pulmonary Medicine for which he has applied, pending the outcome of the lawsuit; and

c. Orders defendants immediately to appoint plaintiff to the position of Attending Physician, pending the outcome of this suit.

(Mo. for Prelim.Inj. at 1.) This court enters a preliminary injunction ordering relief with respect to plaintiff's first two requests and denies the third.

### FACTS

CCH is a large hospital which, by mandate of statute, provides services for many of the city's poor and underprivileged. The individual defendants in this action are responsible for the administration of CCH. Plaintiff states that his "career objective is to remain at Cook County Hospital because of [his] deep philosophical and personal commitment to treating the poor. There is no other position to [his] knowledge in this area which affords a doctor similar opportunities ..." (Cohen Aff. ¶ 6).

Plaintiff was educated in a six-year special honors program in medicine at Northwestern University and was licensed to practice in 1982. Plaintiff has since then trained at CCH for an additional six years. His three-year residency in internal medicine was completed in June, 1985, and he became Board-certified in that area. Plaintiff finished a two-year fellowship in June, 1987, and he is eligible to take the certifying board examination for pulmonary medicine.

Since his employment at CCH, plaintiff has been quite active in political events surrounding various hospital policies. The laundry list of plaintiff's activities—too detailed to enumerate here—includes participation in numerous demonstrations, elections and disciplinary hearings involving issues raised by the International Committee Against Racism, a group of CCH employees concerned about hospital conditions. In February, 1985, following his involvement in a protest at a seminar given by a former Colorado governor who advocated restrictions on medical care for the

elderly, plaintiff was suspended for 30 days. He arbitrated this disciplinary action, received a rescission of the suspension and was awarded back pay. The County did not appeal that decision.

In February, 1987, plaintiff applied for the disputed vacant position of attending physician in pulmonary medicine. The hospital's medical staff bylaws establish the appointment procedure for attending physicians. The procedure requires, first, that the division chairman, department chairman and medical director review and make recomendations on completed applications. The application is then submitted to the credentials committee, the executive medical staff, a joint conference committee, and finally to the County Board of Commissioners. Should the appointment be denied at various points throughout this process, the applicant is entitled to a hearing. According to the president of the medical staff of CCH, Dr. Ian Carr, the entire process customarily takes six to eight weeks to complete (Carr Aff. ¶ 3).

Despite apparent approval by the entire staff of attending physicians in pulmonary medicine at CCH and strong recommendations by the division chairman, Dr. Petham Muthuswamy, plaintiff's application never left the desk of the department chairman, Dr. Burke. Plaintiff claims that at an interview in April, 1987, Dr. Burke stated that plaintiff's letters of recommendation were outstanding and thus "qualifications for the Attending Physician position have never been in question." Dr. Burke asked plaintiff only whether he would participate in another demonstration should there be a return visit from the former Colorado governor, whose appearance plaintiff protested in 1985 (Cohen Aff. ¶ 5).

Plaintiff submits affidavits by Dr. Carr and Dr. Muthuswamy which infer that defendants refused to process plaintiff's application because of his speech activities. Dr. Carr discussed the delay in plaintiff's application with the director of CCH, defendant Terrence Hansen (Hansen), and he states that Hansen told him that the County Board would not vote for plaintiff because of his prior activities and that it was

Hansen's belief that "every legal means would be used to stop the appointment if it went that far" (Carr Aff. ¶ 5). In a similar fashion, in May, 1987, Dr. Muthuswamy discussed the vacant position with the assistant chairman of the Department of Medicine, defendant Dr. Bashir Mamdani (Dr. Mamdani). Dr. Muthuswamy states that Dr. Mamdani commented on plaintiff's protest activities when discussing plaintiff's pulmonary attending physician application (Muthuswamy Aff. ¶ 4). Dr. Muthuswamy further states that in the following month Dr. Mamdani indicated that if another candidate was not forwarded for the vacancy "the Attending position vacancy in the Pulmonary Division would be eliminated" (Muthuswamy Aff. ¶ 8).

Defendants' proffer a different version of these facts. According to Hansen and Dr. Burke, cost reductions in hospital personnel have been a primary objective since 1984. Defendants claim that the proposed deletion of the attending physician position in pulmonary medicine "was only one small part of overall staffing reductions for the entire Department of Medicine, in response to hospital-wide budgetary constraints" (Def.Mem. at 1). In May, 1987, three months after plaintiff applied for the open position, Hansen directed an across-the-board five per cent reduction in the personnel budget for fiscal year 1988. Proposals to void the pulmonary attending physician position followed recommendations of an outside consultant. Dr. Vinod Sahney, who reviewed the staffing requirements allegedly in all areas of the Department of Medicine. Defendants submit a report by Dr. Sahney and his associates analyzing the operations of the pulmonary clinics, their staffing capacities, current and projected workloads, and utilization percentages. Relying upon this report defendants maintain that current staffing in the pulmonary division is adequate to satisfy the needs of CCH patients. Defendants assert that other attending physician positions throughout the Department of Medicine were also eliminated to meet the budgetary concerns.

In May, 1987, defendants froze the appointment process for the position of at-

tending physician in pulmonary medicine and, in September, 1987, Dr. Burke and Hansen stated that that position was being eliminated. The deletion was to be incorporated into the 1988 fiscal year budget, effective December 1, 1987, but which, as represented by defendants' counsel, will need final approval in February, 1988.

## DISCUSSION

To obtain a preliminary injunction plaintiff must show that (1) he has no adequate remedy at law and will suffer irreparable harm unless the preliminary injunction is granted; (2) the harm to him, if the injunction is denied, will be greater than the harm to defendant if the injunction is granted; (3) he has some likelihood of success on the merits; (4) granting the injunction will not unreasonably disserve the public interest; and (5) plaintiff is asking for no more than a return to the status quo. *Roland Machinery Co. v. Dresser Industries*, 749 F.2d 380 (7th Cir.1984). The threshold for showing some likelihood of success is low—"better than negligible," *id.* at 387—and the probability of success factors into the balancing equation which weighs the potential harm to each side of the dispute.

> The more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor.

*Id.* In engaging in that balancing, this court recognizes two dates as significant. In late February the budget will be approved, with or without a budgetary slot for a seventh attending physician. Even if such a position is approved, however, public funds will not be expended until it is filled. Plaintiff will, in all events, remain with CCH until the end of June, since he is a Fellow until that time. It is, of course, desirable that this dispute be resolved well before then in order that plaintiff may may make arrangements elsewhere should he not prevail here. Nevertheless, until then neither the CCH budget nor plaintiff's employment at CCH are irrevocably affected.

## Success on the Merits

The merits of plaintiff's claim are governed by the substantive law of § 1983 which prohibits color-of-law retaliation for the exercise of First Amendment activity. Defendants admit that their actions with respect to the elimination of the attending physician position are under color of state law (Ans. ¶ 6). Further, defendants do not here claim that plaintiff's various demonstrations and protests were disruptive of hospital operations. Therefore, defendants do not challenge plaintiff's prior conduct as activity unprotected by the First Amendment, according to the balancing test in *Pickering v. Board of Education*, 391 U.S. 563, 569 *et seq.*, 88 S.Ct. 1731, 1735 *et seq.*, 20 L.Ed.2d 811 (1968). Defendants' only claim relevant to the merits is based on the theory that their budgetary considerations constitute "wholly independent permissible grounds for [their] actions" (Def.Mem. at 1).

In *Mt. Healthy City School District of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), the Supreme Court vacated a judgment for an untenured teacher who claimed that his constitutional rights had been violated by a decision not to rehire him, which he alleged was based on his exercise of First Amendment freedoms. The district court there held that even if the school had legitimate reasons for not rehiring the plaintiff, the fact that his past speech played a substantial role in the school's action rendered it a § 1983 violation. The Supreme Court rejected this analysis, holding that "the constitutional principle at stake is sufficiently vindicated if such an employee is placed in no worse a position than if he had not engaged in the conduct." *Id.* 429 U.S. at 285–286, 97 S.Ct. at 575. Thus, if the school would not have rehired the plaintiff irrespective of his protected conduct, the remedy of reinstatement would not be available.

Analogizing to *Mt. Healthy*, defendants claim that they would have deleted the position of pulmonary attending physician for budgetary reasons wholly apart from plaintiff's application. This is clearly a disputed fact. The affidavits cited above indi-

cate that defendants' budgetary concerns were pretextual, particularly Dr. Muthuswamy's statement that Dr. Mamdani threatened to eliminate the pulmonary attending physician position if a different candidate was not put forward.

Plaintiff, however, submits much more than that. First, plaintiff disputes defendants' contention that the consultant, Dr. Sahney, reviewed the entire Department of Medicine. A copy of the report's methodology indicates that the consultant only intended to target four subspecialty clinics (Exh. C to Cohen Supp.Aff.), and it is unclear whether even these four were studied. Further, while defendants claim that many other attending physician positions were deleted due to budgetary concerns, citing documents relating to one such position in the Gastroenterology Clinic, plaintiff maintains that no other attending physician vacancies were deleted where an application had previously been submitted. Even the gastroenterology position, plaintiff argues, was not vacant at the time, was left open for further review should there be a vacancy, and was transferred to a consultant's position rather than deleted altogether. Second, while defendant's May, 1987, freeze on the appointment process permitted review of applications on a case-by-case basis pending the consultant's review, plaintiff states that he reviewed executive medical staff minutes which indicate that fifteen vacant attending physician positions, as well as others, were filled during that time. Third, plaintiff submits a memorandum from the pulmonary attending physicians to Dr. Burke which urges that the clinic needs yet another attending position, in addition to the one for which plaintiff applied (Exh. G to Cohen Supp.Aff.). Finally, plaintiff submits a detailed memorandum from the pulmonary attending physicians which cites fundamental errors in the consultant's report (Exh. H to Cohen Supp.Aff.). For example, the doctors criticize the consultant for extrapolation from incomplete interviews and observations, for "serious overestimation of physician hours available," for failing to compare the clinic's no-show rate to other CCH clinics, for "gross error" in calculating clinic visit capacities in light of house staff sessions, and for failure to consider the clinic's interest in research and medical education. In the appendix, the pulmonary attending physicians recalculate the consultant's figures, even leaving out desired time for further research and education, and conclude that the consultant's utilization percentage figures were greatly underestimated. That report was submitted to Dr. Burke in September, 1987.

Where there is no factual dispute material to plaintiff's request for a preliminary injunction, an evidentiary hearing is unnecessary. *See Spartacus Youth League v. Board of Trustees,* 502 F.Supp. 789, 805 (N.D.Ill.1980). The court is not unmindful that a final disposition of this case will involve difficult issues in what appears to be a hard-fought battle over the pulmonary department's operational funds. Because of the conflicting evidence, defendants genuinely dispute plaintiff's chances of winning on the merits. The court is convinced, however, that plaintiff makes a positive showing that his probability of success is much more than negligible. The question remains, then, whether an exact determination of plaintiff's chances of success is essential to our ruling here without an evidentiary hearing. We are convinced that it is not. As discussed below, the balance of harm which would flow from the issuance of a preliminary injunction in this case weighs so heavily in favor of plaintiff that an evidentiary hearing to determine the exact likelihood of success on the merits is unnecessary.

**Irreparable Injury**

Plaintiff clearly shows that without any injunction ordering preservation of the position of attending physician in pulmonary medicine he will suffer irreparable injury. Plaintiff's entire career history—particularly his past six years of training—shows that he has devoted himself to practicing medicine in CCH's difficult environment, where he can service indigent patients. Once the position which plaintiff seeks is eliminated, it will be virtually impossible for the court to award him even the opportunity to fill that position. An award of

monetary damages at the conclusion of a full hearing on the merits would provide a seriously deficient remedy for these intangibles. As plaintiff contends in his affidavit, if it was money he was seeking he would readily look elsewhere for employment.

Plaintiff's claim of irreparable injury goes beyond his desire to secure a particular position at CCH and touches upon the nature of his retaliatory claim. If plaintiff is being sanctioned by CCH administrators for protected First Amendment activity, then the elimination of that position and the refusal to process his application will undoubtedly chill his and others' desires to speak out on issues which might be perceived by hospital administrators as unfavorable topics for County employees to discuss, as well as chill their desire to associate with those who do. "The loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury." *See Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976) (plurality opinion).[1] *See also O'Brien v. Town of Caledonia,* 748 F.2d 403, 409 (7th Cir.1984) (holding that retaliatory disciplinary action had ongoing chilling effect on plaintiff's First Amendment rights and therefore constituted irreparable injury sufficient to sustain a preliminary injunction).

Defendants posit a number of arguments in an attempt to minimize damage to plaintiff. First, they state that plaintiff could not immediately assume the position of attending physician since his fellowship runs until June, 1988. This issue is contested (Cohen Supp.Aff. ¶ 3), but is largely irrelevant for present purposes since the court does not order immediate reinstatement of plaintiff as acting attending physician. Second, defendants assert that the deletion of the position will not be irrevocable and that this case is distinguishable from the situation where the position will be filled

by another person. The court, however, is hard-pressed to perceive a difference in the distinction since, either way, there will be no position for plaintiff. Further, defendants themselves argue that the court should not interfere in the administration of the hospital. If this is true, clearly once the position is actually deleted and the 1988 budget is passed by the Cook County Board of Commissioners, any remedy for plaintiff may well become more intrusive.

Harm to defendants that would result from a preliminary injunction ordering them to preserve the open position and to process plaintiff's application, is negligible at best. Defendants do not claim that the application process itself will produce irreparable (or any) injury to them or the County. Instead, their only claim is that the court's order will "needlessly intervene in the intricate budgetary process" of the hospital (Def.Mem. at 13). While the court does not make light of the difficult process of budgetary considerations, the court's order to keep the position open pending final outcome of this case on the merits can hardly cause the County great disruption. Should the outcome of the trial show that the deletion was unnecessary and based on animus against plaintiff rather than real budgetary concerns, the court's order would only benefit the County's budgetary deliberations. Should defendants win, no real loss will be experienced.

The court's order merely preserves the status quo in the face of plaintiff's allegations of pending unlawful change. Indeed, while defendants claim that it is their responsibility to manage CCH's budget to service the "urgent need for substantial improvement in the State's ability to provide health care services to the indigent in a proficient and compassionate manner," Ill.Rev.Stat. ch. 34, ¶ 5011.1, should plaintiff win on the merits of his challenge that defendants are attempting to delete a much

---

1. Defendants attempt to distinguish *Elrod v. Burns* on the grounds that plaintiff there was discharged and plaintiff here was only denied a future employment opportunity. The court, however, recognizes that plaintiff's six-year tenure at CCH will be effectively terminated should

there be no attending physician position for him to assume. The court further does not believe that this distinction is dispositive on the question of irreparable injury from the chilling effect of defendants' actions.

needed position, the court's order may be the only way to protect the public interest.

## CONCLUSION

For the reasons stated, the court grants plaintiff a preliminary injunction and orders defendants to process plaintiff's application to become an attending physician in the Division of Pulmonary Medicine at Cook County Hospital, and restrains defendants from deleting that position pending the outcome of plaintiff's lawsuit.