Gerald A. KONRATH, Plaintiff,

v.

James D. WILLIQUETTE, John Niebuhr and Vilas County, Defendants.

No. 89–C–752–S.

United States District Court, W.D. Wisconsin.

March 20, 1990.

Lester Pines, Cullen, Weston, Pines & Bach, Madison, Wis., for plaintiff.

Raymond G. Clausen, Straub and Schuch, Madison, Wis., for defendants.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Plaintiff Gerald Konrath, a Vilas County Sheriff's Deputy, and defendant James D. Williquette, Vilas County Sheriff, were candidates for the office of Vilas County Sheriff in the 1988 election. Defendant Williquette won the election. Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging that he was reprimanded by his employer in retaliation for the exercise of his First Amendment rights during the election campaign.

The action is currently before the Court on defendants' motion for summary judgment in which defendants contend that the speech for which the plaintiff was reprimanded was not protected by the First Amendment and that defendants' interest in effectively administering the Sheriff's Department outweighed the plaintiff's interest in exercising his First Amendment rights. Jurisdiction over this action is provided by 28 U.S.C. § 1331.

For purposes of this motion factual disputes have been resolved in plaintiff's favor.

## FACTS

In 1988 defendant James Williquette was Sheriff of Vilas County, defendant John Niebuhr was a captain in the Vilas County Sheriff's Department, and plaintiff Gerald A. Konrath was a Sheriff's Deputy. Plaintiff and defendant Williquette were candidates in the 1988 Republican primary election and in the 1988 general election for the office of Sheriff of Vilas County.

After the plaintiff lost the primary election he entered the general election as a write-in candidate for Sheriff. Approximately one week before the general election plaintiff published an advertisement in the *Vilas County News*. The advertisement stated on its face that it was "authorized and paid for by citizens to write-in Jerry Konrath for Sheriff." The advertisement was in the form of a letter written in the first person by the plaintiff and was entitled: "An Open Letter to Concerned Citizens and Voters of Vilas County." Following are excerpts from the paid political advertisement:

> The incumbent Sheriff has been consistently at odds with the various social and legal agencies and personnel in our community. Officers have refused to respond to real emergencies. His attitude toward the District Attorney is openly flippant and defiant.

> \* \* \* \* \* \*

> Under his administration drug traffic in Vilas County has grown from a trickle to an avalanche. While we must appreciate every drug bust, the little show that was put on just before the primary election was almost a joke. We pull up a few marijuana plants while the cocaine pushers do heavy business (as usual) all over the rest of the county.

> \* \* \* \* \* \*

> He claimed that he had the support of the deputies under him. He established this "fact" by taking a *poll* in the department in which the ballots were marked so as to identify the employee.

On November 23, 1988, after defendant Williquette had won re-election to the office of Sheriff, defendant Niebuhr, with defendant Williquette's consent, sent a letter to the plaintiff concerning the November 2, 1988 advertisement. The letter ordered the plaintiff to:

> ... furnish me with a written report regarding the information given in the advertisement, specifically:

1) any and all information on who failed to respond to real emergencies 2) your knowledge of any information regarding the current drug traffic which has gone from a "trickle to an avalanche." I also requested any and all information you have regarding cocaine pushers who are doing heavy business "(as usual)."

3) any and all information you have as to the marking of the ballots which were used in the departmental poll so as to identify the employees marking those ballots.

\* \* \* \* \* \*

The purpose of my order to you was for determination of possible violation of departmental rules and regulations and/or violation of criminal law. Possible future consideration in this matter could be a John Doe investigation.

\* \* \* \* \* \*

A copy of this letter, your report/request of 11/22/88 to me, and a copy of the advertisement which had been placed in the *Vilas County News Review* are being given to Sheriff Williquette and are being placed in your personnel file.

On January 19, 1989, defendant Niebuhr, with the approval of the defendant Williquette, placed a written reprimand in plaintiff's personnel file as a result of November 2, 1988 advertisement. The reprimand was based upon the Department's general regulations 30 and 31 of the Vilas County Rules. Regulation 30 provides that Department members shall not make statements for publication concerning the plans, policies or affairs of the administration of the Sheriff's Department unless duly authorized to do so by the Police Grievance Committee or the Sheriff. Regulation 31 provides that "Department members shall not engage in discussions conveying censure toward other members of the Department nor authorize publications of a personal nature relating to official transactions within the Department ..."

At the time plaintiff approved the November 2nd advertisement for publication he had information from a member of "Tri-County Domestic Abuse" who stated that she had difficulty obtaining response to emergency domestic abuse cases. The only specific officer who "refused to respond to a real emergency" of whom plaintiff was aware at the time of publication was Deputy Charles Pace. Some cocaine was sold in Vilas County during 1987 and 1988. Dr. Michael Kretz expressed his concern to plaintiff prior to publication that there was increasing narcotics use in Vilas County.

The "drug bust" referred to in plaintiff's advertisement was in reference to an arrest for marijuana possession which occurred shortly before the primary election. Plaintiff's statement in his advertisement that the drug bust was a joke was based solely on the time relationship between the arrest and the election.

At the time of the publication of the advertisement plaintiff based his statement that the ballots were marked upon a conversation he overheard between two other deputies and upon a statement made to him by Lt. Stuhmer of the Sheriff's Department.

## MEMORANDUM

Defendants move for summary judgment arguing that plaintiff's reprimand was not a violation of his First Amendment rights. Summary judgment is appropriate when, after both parties have the opportunity to submit evidence in support of their respective positions and the Court has reviewed such evidence in the light most favorable to the nonmovant, there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), Federal Rules of Civil Procedure.

A factual dispute is material only if its resolution might affect the outcome of the suit under the governing law. A factual dispute is genuine only if a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1982). Under Rule 56(e) it is the obligation of the nonmoving party to set forth specific facts showing that there is a genuine issue for trial.

There is no question that the plaintiff was reprimanded because he published the political advertisement on November 2, 1988. The sole issue is whether the advertisement was speech protected by the First Amendment under the circumstances of this case. Resolving this issue requires a three-step analysis. First, it must be determined whether the speech is absolutely protected as a statement of opinion. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339, 94 S.Ct. 2997, 3006, 41 L.Ed.2d 789 (1974). Second, if the speech is not absolutely protected, it must be determined whether the statements are protected speech because they are true or because they were not made with "actual malice" as that standard is defined in *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Finally, if the speech meets one of the tests for protection, it must be determined if the Sheriff's Department has a compelling interest in regulating the work place which outweighs the employee's right to express himself on matters of public concern. *Connick v. Myers*, 461 U.S. 138, 150, 103 S.Ct. 1684, 1691, 75 L.Ed.2d 708 (1982).

The Court concludes that although the three statements set forth in the letter to the plaintiff are factual and, therefore, not entitled to absolute protection, material fact issues exist concerning the actual basis for the reprimand and the application of the *New York Times* standard. Additionally, the Court finds that if plaintiff's statements are protected, the defendants' administrative concerns are insufficient to outweigh plaintiff's First Amendment rights.

*Absolutely Protected Speech*

■ Opinions concerning public figures and public affairs cannot be libelous. "Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscious of judges and juries, but on the competition of other ideas." *Biggs v. Village of Dupo*, 892 F.2d 1298 (7th Cir.1990) (*quoting Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339–40, 94 S.Ct. 2997, 3006–07, 41 L.Ed.2d 789 (1974)).

Because the statements made in the political advertisement clearly concern a public figure and public affairs, the sole issue in determining whether the statements are absolutely protected is whether they are statements of opinion or fact.

A widely used framework for analyzing the distinction between fact and opinion was provided by the Court of Appeals for the District of Columbia in *Ollman v. Evans*, 750 F.2d 970, 979 (1984). While repeatedly recognizing the difficulty of the task of distinguishing between fact and opinion, the Seventh Circuit has declined to offer guidance on the appropriate structure for reaching such a decision. *See Stevens v. Tillman*, 855 F.2d 394, 398–400 (7th Cir. 1988). Nevertheless, in at least one case the Seventh Circuit has applied the four-part *Ollman* test where the parties agree to its application. *Brown & Williamson Tobacco Corp. v. Jacobson*, 827 F.2d 1119, 1129, n. 3, (7th Cir.1987). Because the parties appear to agree that *Ollman* is appropriate in this case as well, the Court will consider the following four factors set forth in *Ollman*, 750 F.2d at 979:

(1) the common usage of the language.

(2) verifiability of the statement.

(3) the context of the language in the entire article.

(4) the broader context or setting of the statements.

The letter sent to the plaintiff by defendants prior to the final reprimand set forth the following three statements from the political advertisement:

(1) Officers have refused to respond to real emergencies.

(2) Drug traffic in Vilas County has grown from a trickle to an avalanche.

(3) He [the Sheriff] established this "fact" by taking a *poll* in the department in which the ballots were marked so as to identify the employee.

Applying the four *Ollman* factors to these three statements the Court concludes that each is a statement of fact and therefore not entitled to absolute protection. The first factor is to analyze the common usage of the defamatory words. In common usage each of these statements is a

representation of fact. The second factor requires the Court to consider the degree to which the statements are verifiable. The first and third statements are subject to verification. The second statement, while perhaps subject to less precise verification, nevertheless could be verified by police records of which a reader would expect the plaintiff to be aware.

The third factor requires the Court to review statements in the context of the entire political advertisement. The tenor of the political advertisement is generally factual. In fact, the second paragraph indicates that plaintiff is doing his "best to present the voters of this County with facts and figures which illustrate the neglect of the person who now occupies the Sheriff's office." Accordingly, the political advertisement is in a context of factual presentation principally, rather than opinion.

Finally, the fourth factor which the Court must consider is the social context of the speech. Speech made in the context of a political campaign is, of course, most likely to be opinion, and readers necessarily view it with skepticism. However, political speech is not always mere opinion simply because of its context. The speaker in this case was a Sheriff's Deputy who the reading public would assume to have more knowledge concerning the statements made in the ad than would an average reader. For this reason even the political context of this speech does not change the apparently factual statements into statements of opinion.

■ Although the Court concludes that the three statements with which plaintiff was confronted in the defendants' letter were factual and therefore not absolutely protected, this does not necessarily resolve all factual issues concerning whether the plaintiff was reprimanded for absolutely protected speech. Specifically, defendants' findings of fact and brief in this matter indicate that plaintiff may, in fact, have been reprimanded for other statements he made in the advertisement which were absolutely protected. Although not mentioned in the letter to the plaintiff or in his letter of reprimand, the phrase "the little show that was put on just before the primary election was almost a joke" may also have been the basis for the plaintiff's reprimand. The Court concludes that under the four *Ollman* factors this statement would constitute an opinion subject to absolute protection. On its face the statement appears to be an opinion and it is not subject to verification as were the other three statements of fact. In addition, the statement is based upon the proximity of the arrest to the primary election. The conclusion drawn in this statement could be drawn by any reader based upon the timing of the arrests. Under the circumstances where such a statement is made in a political advertisement, the Court finds that the statement would be protected as a political opinion rather than a statement of fact.

Accordingly, the Court finds that a factual issue may exist concerning those portions of the political advertisement which were the basis for the reprimand received by the plaintiff. If the reprimand was based solely upon those statements addressed in the letter sent to the plaintiff, then they are not absolutely protected. However, if the basis for the discipline extended to the other statements within the advertisement, those statements may be absolutely protected as political opinion.

*Presence of Actual Malice*

■ Under the standard established in *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the Supreme Court, recognizing the extreme importance of open speech in the context of political debate, held that speech in such matters, even though false, is protected unless it is "made with 'actual malice,'— that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* at 280, 84 S.Ct. at 726. This same standard applies to statements made by public employees who are subject to disciplinary actions. *Pickering v. Board of Education,* 391 U.S. 563, 573, 88 S.Ct. 1731, 1737, 20 L.Ed.2d 811 (1968). The Court finds that an issue of material fact exists first as to whether any or all of the three factual statements were true or false

at the time they were made. Second, the Court finds that even if such statements were false, a factual issue remains concerning whether the statements were made with actual malice under the *New York Times* standard. The Court now examines the three statements individually.

Facts presently before the Court establish that the plaintiff was aware of at least one officer who failed to respond to a real emergency. The facts do not establish whether or not another instance or another officer may have failed to respond. It is therefore not possible to resolve the truth of the statement on summary judgment. More importantly, there are no facts to support a finding on summary judgment that the statement was made with knowledge that it was false or with reckless disregard or whether it was false or not. In fact, the facts disclose that plaintiff at least had some basis for making the statement and may have erred only in pluralizing the word "officer." The Court cannot find that this establishes as a matter of law the actual malice required by *New York Times v. Sullivan.*

Concerning the statement that drug traffic in Vilas County has grown from a trickle to an avalanche, the facts viewed most favorably to the plaintiff permit an inference that this statement was both true and honestly believed by the plaintiff at the time he made the statement.

Finally, there remains a factual issue as to whether the defendants or other officers knew the manner in which the Sheriff's Deputies were voting in the poll. Certainly there is sufficient evidence to support an inference that the plaintiff had received outside information which led him to believe that the statement was true at the time he made it. Under these circumstances it would be entirely inappropriate to grant summary judgment in defendants' favor.

*Compelling State Interest*

■ Although speech would otherwise be protected, it may be the cause for legitimate disciplinary action if it does not touch on a matter of public concern or if the government entities' interest in disciplining the plaintiff outweighs the interests of the employee in making the protected speech. *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). There is no question that the political advertisement was a statement on a matter of public concern. It is difficult to imagine anything of greater public concern than the discussion of issues in the context of a political campaign. Indeed, First Amendment rights have their "fullest and most urgent application precisely to the conduct of campaigns for political office." *Brown v. Hartlage,* 456 U.S. 45, 53, 102 S.Ct. 1523, 1529, 71 L.Ed.2d 732 (1982) (citation omitted).

■ The Court's task is to strike a balance between the interests of the public employee in commenting on matters of public concern and that of the state as an employer in efficiently providing public services. *Biggs v. Village of Dupo,* 892 F.2d 1298, 1303 (7th Cir.1990) (citing *Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734). As the Seventh Circuit noted in *Biggs,* a police officer's First Amendment rights are not to be lightly restricted as they are most likely to be able to expose matters of public concern within the police department. *Id.* at 1303. *See also O'Brien v. Town of Caledonia,* 748 F.2d 403, 407 (7th Cir.1984) (a policeman's right must be vigilantly protected because he or she is "extraordinarily able to inform the public of deficiencies in this important governmental department.") In light of the political context of the speech and the high level of public concern over the operation of a sheriff's department, plaintiff's First Amendment rights must be afforded great weight when balancing.

In contrast, it is clear that the defendants in this matter had almost no interest in disciplining the plaintiff, and certainly did not have a compelling one. In fact, the deposition testimony of defendant Williquette indicates that the political advertisement had no actual effect on the operation of the Department. Williquette testified that to the best of his knowledge the ability of the department to carry out its functions was not impaired by the feelings that other

officers had about that which was stated in the political advertisement.

Assuming that statements made by the plaintiff in this matter were otherwise protected under the *New York Times* standard, it is clear that his interest in making such statements in the context of a political debate substantially outweighs the interest of the Department in responding to the minor disruption which occurred in the Sheriff's Department as a result thereof. Similar disruption would probably occur in most instances where a sheriff's deputy opposes an incumbent sheriff in an election. Nevertheless, there is great public concern in such elections and in promoting the candidacy of sheriff's deputies. The chilling effect which disciplining the losing candidate would have on future candidates is obvious. Summary judgment cannot be granted to defendants on the basis of their interest in regulating the department.

### ORDER

IT IS ORDERED that defendant's motion for summary judgment is DENIED.